Anna P. CISNEROS, Appellant,

v.

The STATE of Texas, Appellee.

No. 06–04–00057–CR.

Court of Appeals of Texas,
Texarkana.

Submitted Dec. 7, 2004.

Decided May 25, 2005.

Kenneth Mark Deubner, Addison, for appellant.

Al Davis, Asst. Dist. Atty., Joe Black, Dist. Atty., Marshall, for appellee.

Before MORRISS, C.J., ROSS and CARTER, JJ.

## OPINION

Opinion by Chief Justice MORRISS.

After Trooper Lloyd McKinney stopped Anna P. Cisneros for speeding along Interstate Highway 20 in Harrison County, he asked Cisneros for consent to search her vehicle, and she refused. After McKinney misrepresented to Cisneros that he did not need a warrant to search a car, she first told him there was nothing in the car and then told him to "go ahead." McKinney's warrantless search uncovered less than two ounces of marihuana, and Cisneros was charged with its possession. *See* TEX. HEALTH & SAFETY CODE ANN. § 481.121 (Vernon 2003). The trial court overruled her motion to suppress the evidence.[1]

On appeal, in response to Cisneros' contention that the trial court erred

1. No oral or written findings of fact or conclusions of law were entered into the record by the trial court concerning the motion to suppress. Cisneros subsequently pled no contest to the charge and, pursuant to a negotiated plea agreement, was placed on adjudicated community supervision for a period of twelve months.

by overruling her motion to suppress, the State expressly limits its argument to the sole assertion that McKinney's search was lawful because Cisneros gave valid consent to the search.[2] We review the trial court's decision on a motion to suppress evidence by applying a bifurcated standard of review deferring to the trial court's determination of historical facts that depend on credibility, but reviewing de novo the trial court's application of the law. *Burke v. State,* 27 S.W.3d 651, 654 (Tex.App.-Waco 2000, pet. ref'd). We review de novo those questions not turning on credibility and demeanor. *Villarreal v. State,* 935 S.W.2d 134, 138 (Tex.Crim.App.1996). Our review of probable cause concerning a warrantless search is reviewed de novo. *See Guzman v. State,* 955 S.W.2d 85, 87 (Tex.Crim.App. 1997). We will affirm the trial court's ruling if the ruling is reasonably supported by the record and is correct on any theory of law applicable to the case. *Romero v. State,* 800 S.W.2d 539, 543–44 (Tex.Crim. App.1990); *Shaw v. State,* 122 S.W.3d 358, 363 (Tex.App.-Texarkana 2003, no pet.).

▆▆▆ The federal and state Constitutions both guarantee the right to be secure from unreasonable searches and seizures made without probable cause. U.S. CONST. amend. IV; TEX. CONST. art. I, § 9. Article 38.23(a) of the Texas Code of Criminal Procedure forbids any evidence obtained by an unreasonable search to be admitted against an accused. *See* TEX.CODE CRIM. PROC. ANN. art. 38.23(a) (Vernon 2005). When a state official acts without a valid warrant and searches a citizen's private property, that search is per se unreasonable unless an exception to the Fourth Amendment's warrant requirement otherwise permits the search. *Katz v. United States,* 389 U.S. 347, 357, 88 S.Ct. 507, 19

L.Ed.2d 576 (1967); *Rayford v. State,* 125 S.W.3d 521, 528 (Tex.Crim.App.2003).

We reverse because we find the evidence shows (1) Cisneros did not voluntarily consent to the search, and (2) McKinney lacked probable cause to search Cisneros' vehicle.

*1. Cisneros Did Not Voluntarily Consent To Have Her Vehicle Searched*

▆▆▆ Consent to search is "one of the well-established exceptions to the constitutional requirements of both a warrant and probable cause." *Carmouche v. State,* 10 S.W.3d 323, 331 (Tex.Crim.App.2000) (citing *Schneckloth v. Bustamonte,* 412 U.S. 218, 219, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973); *State v. Ibarra,* 953 S.W.2d 242, 243 (Tex.Crim.App.1997)).

> But the Fourth and Fourteenth Amendments require that a consent not be coerced, by explicit or implicit means, by implied threat or covert force. For, no matter how subtly the coercion were applied, the resulting "consent" would be no more than a pretext for the unjustified police intrusion against which the Fourth Amendment is directed.

*Schneckloth,* 412 U.S. at 228, 93 S.Ct. 2041. The test for valid consent is whether it is voluntarily given. *Id.; Carmouche,* 10 S.W.3d at 331.

> [W]hen the subject of a search is not in custody and the State attempts to justify a search on the basis of his consent, the Fourth and Fourteenth Amendments require that [the State] demonstrate that the consent was in fact voluntarily given, and not the result of duress or coercion, express or implied. Voluntariness is a question of fact to be determined from all the circumstances, and while the subject's knowledge of a right to refuse is a

**2.** In the trial court, the State asserted that either (1) the police properly stopped Cisneros for a traffic violation and searched her vehicle after developing probable cause to

search, or (2) Cisneros gave voluntary consent to the search of her vehicle. On appeal, however, the State has expressly limited its argument to consent.

factor to be taken into account, the prosecution is not required to demonstrate such knowledge as a prerequisite to establishing a voluntary consent. *Schneckloth*, 412 U.S. at 248–49, 93 S.Ct. 2041. To determine whether a defendant's will was overborne in a particular case, the reviewing court should assess "the totality of all the surrounding circumstances—both the characteristics of the accused and the details of the interrogation." *Id.* "The federal constitution requires the State to prove the validity of the consent by a preponderance of the evidence; the Texas Constitution requires the State to show by clear and convincing evidence that the consent was valid." *Rayford*, 125 S.W.3d at 528. We hold the State failed to show consent, judged by either standard.

In *Bumper v. North Carolina*, 391 U.S. 543, 546, 88 S.Ct. 1788, 20 L.Ed.2d 797 (1968), four law enforcement officers appeared at an elderly widow's home and informed her that they had a warrant to search the home. After the widow allowed them to enter her home, the officers found a rifle, which was introduced into evidence at Bumper's rape trial. *Id.*[3] The Court held the search violated the Constitution because the widow's consent had been given only after the official conducting the search asserted he had a warrant, which he, in fact, did not have. *Id.* The Court reasoned that once the officers had announced they had a search warrant, they were, in effect, telling the homeowner she could not lawfully resist the search. *Id.* Describing the impact of the officer's claim of a warrant on the widow's decision to grant consent, Justice Potter Stewart wrote, "This situation is instinct with coercion—albeit colorably lawful coercion. Where there is coercion there cannot be consent." *Id.* The Court then reversed Bumper's conviction.

In the case now on appeal, the following exchange between McKinney and Cisneros occurred during the traffic stop:

> McKinney: Will you give me consent to search your vehicle?
>
> Cisneros: No, sir. I can't do that.
>
> McKinney: Why not?
>
> Cisneros: Cause my attorney told me don't ever let nobody [sic] search it without a warrant.
>
> McKinney: You don't need a search warrant for a vehicle, a car.
>
> Cisneros: No?
>
> McKinney: No.
>
> Cisneros: Oh. I didn't know that. Well, there's nothing there.
>
> McKinney: So will you give me consent to search?
>
> Cisneros: Yeah. Go ahead.

 McKinney's statement to Cisneros—that he did not need a search warrant to be able to search a vehicle— would have been true only under limited conditions that are not present here. An officer may search a vehicle without a warrant (1) if there is probable cause[4] to

---

**3.** At trial in *Bumper*, the prosecution abandoned any reliance on the search warrant to provide constitutional authority for the officers' search of the widow's home; instead, the State relied on consent to justify the search. 391 U.S. at 546, 548–50, 88 S.Ct. 1788.

**4.** McKinney testified, during the hearing on Cisneros' motion to suppress, that he did *not* have probable cause to search Cisneros' vehicle and could have searched only with her consent. We note, however, that "an arrest-

ing officer's state of mind (except for the facts that he knows) is irrelevant to the existence of probable cause." *Devenpeck v. Alford*, —— U.S. ——, 125 S.Ct. 588, 593, 160 L.Ed.2d 537 (2004). As Justice Scalia reminded us in *Devenpeck*, "the fact that an officer does not have the state of mind which is hypothecated by the reasons which provide the legal justification for the officer's action does not invalidate the action taken as long as the circumstances, viewed objectively, justify that action." *Id.* at 594 (quoting *Scott v. United States*, 436 U.S. 128, 138, 98 S.Ct.

believe that a crime has been committed, (2) if there is probable cause to believe that contraband is located in the vehicle, and (3) "where it is not practicable to secure a warrant because the vehicle can be quickly moved out of the locality or jurisdiction in which the warrant must be sought." *Blaylock v. State,* 125 S.W.3d 702, 705 (Tex.App.-Texarkana 2003, pet. ref'd) (quoting *Chambers v. Maroney,* 399 U.S. 42, 48–49, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970); and citing *Amos v. State,* 819 S.W.2d 156, 160–61 (Tex.Crim.App.1991)). Nor does an officer need a warrant to search a vehicle *if* the operator voluntarily consents *and* that consent has not been coerced. *State v. Hunter,* 102 S.W.3d 306, 310 (Tex.App.-Fort Worth 2003, no pet.) (citing *Florida v. Royer,* 460 U.S. 491, 497–98, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983); *Johnson v. State,* 912 S.W.2d 227, 235 (Tex.Crim.App.1995)). Yet McKinney's statement regarding his ability to search a vehicle without a warrant clearly suggested to Cisneros that he could search her vehicle regardless of any other considerations, in spite of Cisneros' previously expressed refusal to consent. And it is clear from the record before us that Cisneros would not have given consent absent McKinney's mischaracterization of the law.

In essence, McKinney's statement (if sanctioned by this Court), would, without more, allow the automobile exception to swallow the rule against unreasonable searches and seizures by allowing officers to suggest—falsely—that people lack the right to resist an automobile search. McKinney's statement is coercive, in much the same way as the assertion in *Bumper* was held by the United States Supreme Court to violate the defendant's constitutional rights. *See Bumper,* 391 U.S. at

546, 88 S.Ct. 1788; *see also Erdman v. State,* 861 S.W.2d 890, 894 (Tex.Crim.App. 1993) (officer's misinformation asserted "considerable psychological pressure" on accused; refusal to suppress evidence was abuse of discretion). Accordingly, Cisneros' consent was coerced, and McKinney's search could not be justified on that basis.

### 2. There Was No Probable Cause To Search

█ Because we must affirm the trial court's ruling if it is correct on any ground applicable to the case, we next address whether probable cause existed to justify the search. We conclude it did not.

█ The "automobile exception" authorizes an officer to conduct a warrantless search of an automobile as long as the officer reasonably believes (1) there is probable cause to believe that a crime has been committed, (2) there is contraband located in the vehicle, and (3) "it is not practicable to secure a warrant because the vehicle can be quickly moved out of the locality or jurisdiction in which the warrant must be sought." *Chambers,* 399 U.S. at 48–49, 90 S.Ct. 1975; *Amos,* 819 S.W.2d at 160–61. If the automobile exception authorizes an officer's search, the officer is permitted to search every part of the vehicle, as well as any contents therein, that may conceal the object of the search. *United States v. Ross,* 456 U.S. 798, 825, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982); *Blaylock,* 125 S.W.3d at 705.

In determining probable cause, courts must consider the totality of the circumstances. *Angulo v. State,* 727 S.W.2d 276, 278 (Tex.Crim.App.1987). Although probable cause requires more than mere suspicion, it requires far less evidence than is needed to support a conviction or

1717, 56 L.Ed.2d 168 (1978)). "The Fourth Amendment's concern with 'reasonableness' allows certain actions to be taken in certain circumstances, *whatever* the subjective in-

tent." *Devenpeck,* —— U.S. at ——, 125 S.Ct. at 594 (quoting *Whren v. United States,* 517 U.S. 806, 814, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996)).

even a finding by a preponderance of the evidence. *Middleton v. State,* 125 S.W.3d 450, 457 (Tex.Crim.App.2003). Instead, probable cause exists where officers have reasonably trustworthy information sufficient to warrant a reasonable belief that an offense has been or is being committed. *McGee v. State,* 105 S.W.3d 609, 614 (Tex.Crim.App.2003). *Blaylock,* 125 S.W.3d at 705; *see also Devenpeck,* ── U.S. ──, 125 S.Ct. at 593. "The articulable facts used by the officer must create some reasonable suspicion that some activity out of the ordinary is occurring or has occurred, some suggestion to connect the detainee with the unusual activity, and some indication the unusual activity is related to crime." *Autry v. State,* 21 S.W.3d 590, 592 (Tex.App.-Houston [1st Dist.] 2000, no pet.) (citing *Meeks v. State,* 653 S.W.2d 6, 12 (Tex. Crim.App.1983)).

■■■ Under the Texas Court of Criminal Appeals' interpretation of *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), and its progeny, the police must be able to articulate facts that support a reasonable suspicion that the suspect is engaging in, or is about to engage in, criminal activity. *See Davis v. State,* 947 S.W.2d 240, 242–44 (Tex.Crim. App.1997). Such stops are generally referred to as "investigative detentions." "Additionally, Texas Courts recognize that investigative detentions become unreasonable when they are not reasonably related in scope to the circumstances which justified the interference in the first place." *Id.* Moreover, the detention "must be temporary and last no longer than necessary to effectuate the purpose of the stop. The police may not carry out a full search of the person or his effects. Nor may they verify their suspicions by means that approach an arrest." *Id.* (quoting *Collier v. State,* 843 S.W.2d 176, 177 (Tex.App.-Houston [14th Dist] 1992, no pet.)); *see also Florida v. Royer,* 460 U.S. 491, 500, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983). "[O]nce the reason for the stop has been satisfied, the stop may not be used as a 'fishing expedition for unrelated activity.'" *Davis,* 947 S.W.2d at 243 (quoting *Ohio v. Robinette,* 519 U.S. 33, 41, 117 S.Ct. 417, 136 L.Ed.2d 347 (1996)).

■■■ "The propriety of the stop's duration is judged by assessing whether the police diligently pursued a means of investigation that was likely to dispel or confirm their suspicions quickly." *Davis,* 947 S.W.2d at 245 (quoting *Perez v. State,* 818 S.W.2d 512, 517 (Tex.App.-Houston [1st Dist.] 1991, no pet.)). In a traffic stop situation, the police may ask for identification, a valid driver's license, and proof of liability insurance. *Davis,* 947 S.W.2d at 245 n. 6. Police may also check for outstanding warrants. *Id.* During the stop, however, an officer must use "the least intrusive means reasonably available to verify or dispel the officer's suspicion in a short period of time." *Id.*

In this case, the parties do not contest the reasonableness of the initial traffic stop, in that Cisneros was driving at seventy-nine miles per hour in a seventy-mile-per-hour zone. We therefore begin with the assumption that Cisneros' initial detention for speeding was reasonable. Under the authorities previously discussed, McKinney's detention of Cisneros "was required to be temporary and could last no longer than was necessary" to satisfy or dispel the officer's original suspicion of speeding and to conclude the stop. *Id.*

Therefore, we are to examine the totality of the circumstances [5] known by McKinney during the legitimate traffic stop [6] and

---

**5.** *See Blaylock,* 125 S.W.3d at 705.

**6.** The record shows that McKinney's purpose for the traffic stop had been satisfied once

determine whether these circumstances provided McKinney with probable cause to search the vehicle. While the evidence provides some suspicious circumstances, it falls short of the probable cause necessary to justify McKinney's search, regardless of whether (1) McKinney's detention of Cisneros was justified only until he determined to issue Cisneros a warning ticket for excessive speed, or (2) detention was justified until the warning was actually issued some minutes later.[7]

### a. Passenger's "Sleep" and Avoidance

When McKinney initially approached the vehicle,[8] he did so from the passenger's side. He noticed that the passenger had his seat in a reclining position and appeared to be asleep. This, however, made McKinney uneasy, because it has been his experience that people usually awaken or sit up when a vehicle stops. Moreover, McKinney later determined that the passenger was not asleep, yet the passenger had pretended to be asleep and still refused to make eye contact with McKinney once the passenger had "awakened." That certainly may trigger some suspicion, but it does not necessarily indicate the passenger's consciousness of some criminal guilt.

### b. Cisneros' Nervousness

McKinney testified that, while awaiting completion of a check on Cisneros' and the passenger's driver's licenses and criminal histories, he observed Cisneros behaving nervously and fidgeting. According to McKinney, "She was moving back and forth, scratching, running her hand through her hair, looking at the vehicle, rubbing on the trunk of the vehicle. Things I had never experienced other drivers doing on a traffic stop." McKinney testified these behaviors were consistent with a state of heightened nervousness and suggested Cisneros was either planning to fight with, or flee from, the trooper. The videotape of the traffic stop—introduced into evidence by the State—shows Cisneros variously smoking a cigarette, leaning against a vehicle, standing, and sometimes pacing between her car and McKinney's. Her nervousness on the videotape—shown by running her fingers through her hair, some pacing around the rear of her vehicle, and smoking a cigarette during the six minutes she waited alone at the rear of her car while McKinney ran a check of her license—does not appear to be aberrational behavior for a woman who had been pulled over along the interstate and made to stand alone at the rear of her vehicle for a period of time, during which time she was stung by ants.[9] Nervousness, alone—

---

he issued Cisneros a warning ticket for her excessive speed. Nevertheless, McKinney continued his detention of Cisneros. He subsequently asked her if she had ever been arrested. Cisneros honestly admitted she had, and McKinney then asked her about those arrests. Then continuing to detain her beyond the scope of the already completed traffic stop, McKinney further questioned Cisneros about whether she had any narcotics or dead bodies in her car. Finally, McKinney asked for consent to search—consent that Cisneros initially withheld.

7. Very shortly after the stop, McKinney can be heard on the videotape telling Cisneros that he was going to issue her a warning ticket. A few additional minutes passed before the warning was actually issued. Because we hold there was no probable cause even when the warning was issued, we do not address whether any reasonable suspicion justified the delay after McKinney's decision to issue the warning.

8. McKinney is a certified drug recognition expert and has been trained to detect and identify what type of drug a suspect may be using. McKinney stopped Cisneros' vehicle for speeding at 11:30 a.m.

9. McKinney noted that, during the traffic stop, Cisneros had probably been stung on her feet by ants while she stood on the side of the road.

sometimes even combined with other factors—does not supply probable cause. *See Hamel v. State,* 582 S.W.2d 424, 426 (Tex. Crim.App.1979).

### c. *Cisneros' Trip to Her Car*

McKinney also testified he saw Cisneros later walk to the passenger-side window of her vehicle, say something to her passenger, and point toward the back seat before returning to stand at the rear of the vehicle. The suggestion is that such activity was a suspicious circumstance. While McKinney's account is true as far as it goes, the videotape reveals that Cisneros' trip to the side of her car and her pointing to the back seat was associated with her successful effort to get her shoes and put them on, after being stung by ants while on the side of the road.

### d. *"Conflicting" Stories*

McKinney testified Cisneros and her passenger gave conflicting stories about the purpose of their travel and their intended destination. We have reviewed the record of these stories and do not detect any necessary conflict in them. Cisneros told McKinney she and her passenger were going to gamble at a Shreveport casino. Her passenger initially said they were going to Shreveport but he did not know where, then that he was just riding with her, but finally that they were going to gamble in Shreveport. While the passenger's answers could have evidenced evasiveness, they could also have come from normal, and innocent, imprecision in communication.

### e. *Passenger's Lack of Identification*

McKinney also cited as suspicious his observation that, although the passenger claimed to be headed to Shreveport to gamble, he did not have any form of identification. McKinney stated it was his experience that the Shreveport casinos require gamblers to present identification before they were allowed access to the casino floor. We note the passenger's comment that he had never been to Shreveport to gamble. His lack of identification could have been because of his lack of experience with Shreveport casinos. And given that he appeared to be well into, if not above, his thirties, it is quite possible that he did not anticipate needing identification to gain acceptance into a casino.

### f. *Cisneros' and Passenger's Arrest Records*

McKinney's suspicions were heightened after both Cisneros' and the passenger's criminal histories returned with recent drug and weapons arrests. Certainly, that provides proper fuel for suspicion.

Based on the facts, McKinney concluded he had probable cause to search the vehicle for drugs. He admitted on cross-examination, however, that he did not have probable cause to search the vehicle, but needed to rely on Cisneros' consent to justify the search.

From the totality of the circumstances, we hold McKinney's search was not based on probable cause, that is, he did not have articulable facts that, when taken together with rational inferences from such facts, "would warrant a person of prudence and caution in believing that an offense had been or is being committed." *See McCallum v. State,* 608 S.W.2d 222, 223 (Tex. Crim.App.1980). McKinney had no articulable facts available to him—before concluding the traffic stop for speeding and issuing a warning ticket, nor even after his subsequent, prolonged questioning of Cisneros—that indicated Cisneros or her passenger was engaged in criminal conduct. *See Davis,* 947 S.W.2d at 245–46; *McQuarters v. State,* 58 S.W.3d 250, 256–58 (Tex.App.-Fort Worth 2001, pet. ref'd). Consequently, the trial court erred by admitting the fruit of that search.[10]

**10.** Recently in *Muehler v. Mena,* —— U.S. ——, 125 S.Ct. 1465, 161 L.Ed.2d 299 (2005), the United States Supreme Court held an

To prevail, Cisneros must also show harm. *See* Tex.R.App. P. 44.2; *Galitz v. State,* 617 S.W.2d 949, 952 n. 10 (Tex.Crim. App.1981); *Jeffley v. State,* 38 S.W.3d 847, 858 (Tex.App.-Houston [14th Dist.] 2001, pet. ref'd). The harm is obvious, in that the marihuana which Cisneros is charged with possessing, and which should have been suppressed, is key evidence in the State's case against her.

*Conclusion*

Viewing the evidence in the light most favorable to the trial court's ruling, the record shows Cisneros' consent was effectively coerced by McKinney's misinformation, and there was no probable cause to search. Because the contraband discovered by the resulting search should have been suppressed, and failure to do so was harmful, we reverse the judgment and remand this case to the trial court for further proceedings in accordance with this opinion. *See Ford v. State,* 158 S.W.3d 488 (Tex.Crim.App.2005).

officer's questioning of a suspect during the execution of a search warrant did not violate the suspect's Fourth Amendment rights. The Court noted that the lower appellate court "did not hold that the detention was prolonged by the [officer's] questioning, [and therefore] there was no additional seizure within the meaning of the Fourth Amendment." *Id.* By contrast, the record in the case now before this Court clearly shows McKinney's questioning did prolong the detention; so, absent probable cause—which we have determined was lacking under the totality of the circumstances—McKinney's prolonged questioning amounted to an additional, impermissible seizure within the meaning of the Fourth Amendment.