In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-06-00238-CR


______________________________




JOE DON STRICKLAND, Appellant



V.



THE STATE OF TEXAS, Appellee




 


On Appeal from the 124th Judicial District Court


Gregg County, Texas


Trial Court No. 33341-B




 




Before Morriss, C.J., Carter and Moseley, JJ.


Memorandum Opinion by Justice Moseley



MEMORANDUM OPINION



 Joe Don Strickland drove his vehicle across a centerline and crashed into a car driven by
Daniel Blalock, who was severely injured in the collision. Blalock's injuries included damage to his
body such that his liver was extruding from his body when he was taken to the hospital. A jury
convicted Strickland of intoxication assault and assessed his punishment at ten years' imprisonment,
a result from which Strickland appeals.

 Strickland raises two issues on appeal. He first contends that the trial court erred by
admitting overly prejudicial photographs which showed, in graphic detail, the physical injuries
sustained by Blalock. As a second point, Strickland contends that the results of a blood test taken
shortly after the collision should not have been admitted into evidence because he had not willingly
consented to the seizure of his blood. 

Photographs of the Victim's Injuries

 Strickland's first contention boils down to the argument that it was unfairly prejudicial or
inflammatory for the jury to have been permitted to see the photographs taken of Blalock and the
injuries he sustained; these were used by the physician as a prop to explain the nature of the injuries
and the treatment used by medical personnel in caring for Blalock. The photographs depict the
injuries incurred during the accident and show the process of treatment immediately after Blalock
arrived at the trauma center. In analyzing whether such photographs are unfairly prejudicial or
inflammatory, however, the caselaw generally makes reference to an "undue tendency" to suggest
decision on an "improper basis" such as an "emotional one." Saldano v. State, No. AP-72556, 2007
WL 1610422, at *19 (Tex. Crim. App. June 6, 2007); see Newbury v. State, 135 S.W.3d 22, 43 (Tex.
Crim. App. 2004). The photographs in this case depict the result of Strickland's actions and what
the verbal testimony properly described. See Newbury, 135 S.W.3d at 43. 

 The admissibility of a photograph is within the sound discretion of the trial court. Shuffield
v. State, 189 S.W.3d 782, 786 (Tex. Crim. App. 2006). That decision to admit or exclude evidence
will not be overturned on appeal absent a showing that the trial court abused its discretion. Id. at
787. The Texas Rules of Evidence favor the admission of all relevant evidence at trial, though these
evidentiary rules do provide exceptions that would exclude otherwise relevant and admissible
evidence. See Tex. R. Evid. 401. One of those exceptions to the admissibility of evidence appears
in Rule 403 of the Texas Rules of Evidence: "Although relevant, evidence may be excluded if its
probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues,
or misleading the jury, or by considerations of undue delay, or needless presentation of cumulative
evidence." Tex. R. Evid. 403. 

 In the event that an appellant challenges the propriety of the trial court's admission of
evidence over a Rule 403 objection, an appellate court should consider a number of factors,
including:


 (1) how probative the evidence is;

 

 (2) the potential of the evidence to impress the jury in some irrational, but
nevertheless indelible way;


 (3) the time the proponent needs to develop the evidence; and


 (4) the proponent's need for the evidence. 


Shuffield, 189 S.W.3d at 787. The reviewing court should also take into account other factors as
well, including:

 the number of photographs, the size of the photograph, whether it is in color or black
and white, the detail shown in the photograph, whether the photograph is gruesome,
whether the body is naked or clothed, and whether the body has been altered since
the crime in some way that might enhance the gruesomeness of the photograph to the
appellant's detriment.

Ledbetter v. State, 208 S.W.3d 723, 731-33 (Tex. App.--Texarkana 2006, no pet.).

 In his testimony in this case, Blalock's treating physician used the photographs to explain the
nature of the injuries and to explain the procedures used to treat Blalock. He carefully explained the
types of injuries to Blalock resulting from the automobile collision caused by Strickland and the
purposes of the various tubes inserted into Blalock's abdomen and what was necessary for him to
recover from those injuries. The photographs were obviously probative. The photographs were
undoubtedly explicit (as they would necessarily be for use with such explanations), but they were
not more emotionally loaded than any usual clinical photograph of a patient who had sustained
serious wounds. There was nothing about the photographs that would raise any undue tendency to
suggest that a decision would be made by the jury on an emotional, rather than a rational, basis as
a result of viewing them. The time needed to develop the evidence was insignificant; although (as
in almost any case) verbal descriptions could have been utilized in lieu of the photographs, use of
the photographs eliminated much of the guesswork in which the jury would otherwise have been
required to indulge in order to understand the nature and severity of the injuries. (1) 

 Under these circumstances, the trial court would not have abused its discretion to determine
that any tendency of the photographs to suggest the making of a decision by the jury on an emotional
basis was not "undue" or that any "undue tendency" to suggest a decision on an emotional basis did
not "substantially outweigh" or even "outweigh" the probative value of the photographs. See id.; see
also Escamilla v. State, 143 S.W.3d 814, 826 (Tex. Crim. App. 2004) (trial court did not abuse its
discretion to admit autopsy photographs because they helped explain the medical testimony
describing the victim's various injuries caused by the defendant). The contention of error is
overruled.

Blood Test Results

 Strickland next contends that the trial court erred by admitting into evidence the results of
his blood test. A blood test was taken at the hospital after the accident; the test of the blood sample
revealed the existence of .24 grams of alcohol per 100 milliliters, well above the 0.08 level which
is statutorily defined as intoxication. See Tex. Penal Code Ann. § 49.01(2)(B) (Vernon 2003). 

 Strickland argues that the State had no right to have a sample of his blood taken and tested,
extrapolating from that position that the results of the blood test could not be properly introduced
into evidence. In response, the State argues that the sample was taken pursuant to Strickland's
consent and that since it was a consensual taking, no error could be shown. Strickland's argument,
however, does not attack the adequacy of consent but, rather, whether the consent to take a blood
sample was given by Strickland only as the result of coercion by the officer.

 The generic rule in the challenge to a search where the granting of a voluntary consent is
controverted is that the State must prove the voluntariness of a consent to search by clear and
convincing evidence. Harrison v. State, 205 S.W.3d 549, 552 (Tex. Crim. App. 2006). A trial court
is to consider the totality of the circumstances surrounding the statement of consent in order to
determine whether that consent was given voluntarily. Id. When a trial court does not enter findings
of fact when denying a motion to suppress, a reviewing court must view the evidence in the light
most favorable to the trial court's ruling and assume that the trial court made implicit findings of fact
that support its ruling as long as those findings are supported by the record. Id. Finally, we must
afford almost total deference to the trial court's rulings on credibility questions. Id.

 Here, the record reflects that Trooper Kendall Belt testified that while he was with Strickland
at the hospital, he requested and received Strickland's verbal consent to draw blood. Belt had filled
out a consent form for Strickland's signature, but he testified that it was never signed because
Strickland told him that he was then physically unable to sign the form. Strickland points out that
Belt also testified that he had told Strickland that if he refused his consent, Belt would obtain the
blood sample as a mandatory blood specimen; he continues that Belt admitted that Strickland was
not, at that point, under arrest (had he been under arrest, this would bring into play the mandatory
blood specimen section of the Texas Transportation Code (2)). The record shows that Strickland was
arrested later that night upon his release from the hospital. 

 Strickland argues that by the officer's representation to him that he would obtain the blood
sample as a mandatory specimen, the officer unlawfully coerced him to provide a consent that was
not voluntarily given. At trial, the State did not respond in any fashion to Strickland's argument on
coercion but, rather, simply argued its conclusion: that the taking was consensual. The trial court
then overruled Strickland's objection. Based on this state of the record, the sole question is as
follows: If a law officer informs a person that if they do not give consent to a search, the officer will
be able to perform one anyway, does that representation constitute improper coercion which renders
the verbal consent involuntary? 

 Unlike most of the cases reviewing coercion which precipitates consent, this situation does
not involve multiple witnesses whose testimony is conflicting. Instead, we have a single witness (the
officer) who provided all of the evidence about the events leading up to the verbal consent. Thus,
the trial court's exercise of weighing the credibility of multiple witnesses is not at issue in this case.

 The drawing of a blood sample is a search. Aliff v. Staten, 627 S.W.2d 166, 169 (Tex. Crim.
App. 1982). Under Texas statutory law, a person is deemed to have given consent to the taking of
blood upon his arrest if driving while intoxicated (DWI) has been alleged. Tex. Transp. Code
Ann. § 724.011. It applies, however, only to those who have been placed under arrest. Aliff, 627
S.W.2d at 169. In this case, Officer Belt testified that he had not formally arrested Strickland at the
time Belt presented the consent form to him. Never having been signed, the consent form itself is
not in the record. Belt testified that he smelled the odor of alcohol on Strickland and that Strickland
was arrested later that night. He also testified that he conducted a DWI interview with Strickland,
following a form that is found in the record. The basic warnings that must be constitutionally and
statutorily provided to an arrested person are set out in writing and are fully in the form; the form
was initialed by Strickland. 

 On cross-examination, Officer Belt testified that he conducted field sobriety tests on
Strickland and decided to take a blood sample; that Trooper Adam Bell arrived and arrested
Strickland on three counts of intoxication assault. 

 This Court has held in the context of an automobile search that when an officer incorrectly
informed a defendant that he has the right to search--in a situation where he does not--the
defendant's consent is coerced. 

 [the officer's] statement (if sanctioned by this Court), would, without more, allow the
automobile exception to swallow the rule against unreasonable searches and seizures
by allowing officers to suggest--falsely--that people lack the right to resist an
automobile search. [The officer's] statement is coercive, in much the same way as
the assertion in Bumper was held by the United States Supreme Court to violate the
defendant's constitutional rights. See Bumper, 391 U.S. at 546, 88 S.Ct. 1788; see
also Erdman v. State, 861 S.W.2d 890, 894 (Tex. Crim. App. 1993) (officer's
misinformation asserted "considerable psychological pressure" on accused; refusal
to suppress evidence was abuse of discretion). Accordingly, Cisneros' consent was
coerced, and [the officer's] search could not be justified on that basis.

Cisneros v. State, 165 S.W.3d 853, 858 (Tex. App.--Texarkana 2005, no pet.). 

 This case, however, provides a different scenario. In Cisneros, we were careful to point out
that the officer's statement that he did not need a search warrant to search a vehicle was true only
under limited conditions "that are not present here." Id. at 857. Thus, the officer effectively lied to
the defendant in order to obtain the consent to search. In contrast to that, in the present case, the
statement given by Officer Belt was true under an already existent condition which, at minimum,
came to completion only shortly after Belt made the statement. 

 Under these facts (and assuming, as maintained by Strickland that Strickland was not under
arrest at that time), Belt had not created and communicated a fiction in order to coerce the consent
for a search; rather, he was instead warning Strickland about the reality of his situation. Strickland
was subject to immediate arrest based on the information which was in Belt's possession at the time
that representation was made--and was, in fact, arrested immediately thereafter--and without
reference to the eventual results of the blood test. Cf. Erdman v. State, 861 S.W.2d 890, 894 (Tex.
Crim. App. 1993). (3)

 We find this situation distinguishable from Cisneros and conclude that because Officer Belt's
comment was effectively a truthful statement, the consent was not coerced.

 We also recognize that there is some authority which could support a conclusion that due to
the nature of the written interview form and the warnings given to Strickland when he was
interviewed, he was effectively arrested at that time. In Texas Department of Public Safety v.
Latimer, 939 S.W.2d 240 (Tex. App.--Austin 1997, no pet.), the court pointed out that the accused,
having been given the statutory warnings, including a statement that "You are under arrest for the
offense of Driving While Intoxicated," was effectively under arrest at that point in time. Id. at 244. 
In this case, there is no "you are under arrest" statement but he was given the statutory warnings that
are appropriate for an arrested individual. Although not conclusive, it is a further indication that the
officers did not consider Strickland as being free to leave, a circumstance which could suggest that
he was actually under arrest at the time.

 Based on these factors, we conclude that the comment of the officer was not coercive as that
concept exists in the law and that the trial court thus did not err by concluding that Strickland's oral
consent was voluntary.

 We affirm the judgment.



 Bailey C. Moseley

 Justice


Date Submitted: August 20, 2007

Date Decided: September 11, 2007


Do Not Publish


1. The photographs in our record are black and white photocopies of the original pictures. The
record does not indicate whether the originals were in black and white or in color. The detail is that
of any close, focused picture, and the body was sufficiently exposed to reveal the injured portions. 
We find none of these other considerations to be controlling.
2. See Tex. Transp. Code Ann. § 724.011 (Vernon 1999), § 724.012 (Vernon Supp. 2006).
3. This case contrasts with Washburn v. State, No. 06-07-00041-CR, recently issued by this
Court, in which we determined, under the particular circumstances which existed there, that
Washburn was actually under arrest.