IN THE

TENTH COURT OF APPEALS




 
 
 
 
 
 
 


 



No. 10-06-00326-CR

 

Joseph Francis Weaver,

                                                                                    Appellant

 v.

 

The State of Texas,

                                                                                    Appellee

 

 

 



From the 367th District Court

Denton County, Texas

Trial Court No. F-2005-1245-E

 



MEMORANDUM  Opinion



 








            Joseph Francis Weaver was charged with
one count of indecency with a child and three counts of aggravated sexual
assault.  The jury convicted Weaver of the indecency count, for which he
received twenty years in prison, and one aggravated sexual assault count, for
which he received ninety-nine years in prison.  In two points of error, Weaver challenges:
(1) the denial of his motion to suppress; and (2) the admission of certain
testimony.  We affirm.

 

MOTION TO SUPPRESS

            In his first point, Weaver argues that
the trial court erred by denying his motion to suppress tape recordings of telephone
conversations between Weaver and the victim, C.V., because: (1) there was no
vicarious consent; and (2) there is a reasonable expectation of privacy in
conversations conducted via speakerphone.

Standard of Review

We apply a bifurcated standard of review to the denial
of a motion to suppress.  See Haas v. State, 172 S.W.3d 42, 49
(Tex. App.—Waco 2005, pet ref’d).  First, we review the denial for abuse of
discretion.  See Oles v.
State, 993
S.W.2d 103, 106 (Tex. Crim. App. 1999).  Second, we conduct a de
novo review of the law as applied to the facts.  See Haas, 172 S.W.3d at 49; see also Carmouche
v. State, 10
S.W.3d 323, 327 (Tex. Crim. App. 2000);  Oles, 993 S.W.2d at 106. 
The court’s findings receive “almost total deference” and absent specific
findings, we review the evidence in the “light most favorable” to the ruling.  Haas, 172 S.W.3d at 49; Carmouche, 10 S.W.3d at 327-328.  The
ruling will be affirmed if “reasonably supported by the record” and correct on any
applicable legal theory.  Romero v. State, 800 S.W.2d 539, 543 (Tex. Crim. App.
1990); Cisneros v. State, 165 S.W.3d 853, 856 (Tex. App.—Texarkana 2005, no pet.). 
 

Analysis

A person commits an offense if
he “intentionally intercepts, endeavors to intercept, or procures another
person to intercept or endeavor to intercept a wire, oral, or electronic
communication,” unless the “person is a
party to the communication” or “one of the parties to the communication has
given prior consent.”  Tex. Pen. Code
Ann. § 16.02(b)(1); (c)(4)(A)-(B) (Vernon Supp. 2007).

The record contains four audio tapes recorded by C.V.’s
mother Rosemary, Weaver’s “common law wife,” of conversations between Weaver
and C.V.  Weaver filed a motion to suppress the tapes on grounds that they were
made without either his or C.V.’s consent.  At a hearing on the motion, Weaver admitted
having telephone conversations with C.V., but denied consenting to the
recording of these conversations.  C.V. testified that she consented to the
recording of two tapes and the remaining tapes were made while she was speaking
to Weaver via speakerphone.  During these conversations, she and Weaver
discussed their relationship and ways to conceal the relationship from Rosemary. 
C.V. believed that Rosemary made the tapes to obtain proof of C.V.’s
relationship with Weaver.  The State argued that the tapes were admissible
because a parent may give vicarious consent to record a child’s telephone
conversations and that there is no legitimate expectation of privacy in
speakerphone conversations.  The trial court denied Weaver’s motion.[1]

Vicarious Consent

Until recently, “no Texas cases have addressed a
parent’s ability to vicariously consent to the recording of a child’s telephone
conversations.”  Alameda v. State, No. PD-0231-06, 2007 Tex. Crim. App. Lexis 868, at *9 (Tex. Crim. App. June 27, 2007).  The parties cite to two cases, Pollock v.
Pollock, a Sixth Circuit case, and Alameda v State, a Fort
Worth Court of Appeals case, which discuss the doctrine of vicarious consent in
the context of the parent/child relationship.[2]

In Pollock, Samuel and Laura Pollock
brought an action against Sandra Pollock, alleging that Sandra violated the
federal wiretapping statute when she recorded conversations between Samuel and
their minor daughter Courtney, and between Laura, Samuel’s wife, and Courtney. 
See 154 F.3d 601, 602
(6th Cir. 1998).  Sandra argued
that “she ‘vicariously consented’ to the recording on behalf of Courtney, a
minor child in her custody, because she was concerned that Samuel was
emotionally abusing Courtney.”  Id. at 603.  The Sixth Circuit held that “as long as the
guardian has a good faith, objectively reasonable basis for believing that it
is necessary and in the best interest of the child to consent on behalf of his
or her minor child to the taping of telephone conversations, the guardian may
vicariously consent on behalf of the child to the recording.”[3] 
 Id. at 610.

In Alameda, Deborah H. recorded
conversations between her daughter J.H. and Alameda because she suspected that the
two were communicating without her knowledge and engaging in inappropriate
behavior, and she was concerned for J.H.’s safety.[4] 
See 181 S.W.3d 772, 774 (Tex.
App.—Fort Worth 2005), aff’d, No.
PD-0231-06, 2007 Tex. Crim. App.
Lexis 868 (Tex. Crim. App. June 27, 2007).  The recordings revealed a sexual
relationship between Alameda and J.H.  Id. at 774-75.  Alameda filed a
motion to suppress the tapes, arguing that they are inadmissible because “section 16.02 of the penal code
makes it an offense to intentionally intercept wire communications when no
consent has been given.”  Id. at 775.  “The State argued that Deborah
vicariously consented to the recording of the conversations on J.H.’s behalf.” 
 Id.  After identifying the issue
as one of first impression in Texas, the Fort Worth Court adopted the rule in Pollock. 
See id. at 777-79.  The tapes were admissible because Deborah suspected
that Alameda and J.H. were engaging in inappropriate behavior:

It would seem logical that parents could install a
recording device on their telephone after suspecting that their child was
engaging in inappropriate behavior with an adult, regardless of whether parents
suspected the behavior was sexual in nature.               

 

Id. at 780.  The Court of Criminal Appeals recently
affirmed Alameda, applying the doctrine of vicarious consent to the
“existing consent exception to the wiretap statute.”  See Alameda,
2007 Tex. Crim. App. Lexis 868, at *12-13.

            Weaver
argues that, unlike in Alameda and Pollock, Rosemary failed to
articulate a good faith reasonable basis for believing that the recordings were
in C.V.’s best interest.  He complains that the State never inquired as to Rosemary’s
basis for recording the conversations.[5]  This
argument ignores the fact that at the
hearing on Weaver’s motion to suppress, Rosemary
pleaded the Fifth Amendment and refused to answer any questions addressing
whether she recorded conversations between Weaver and C.V.

However, Rosemary’s written statement was admitted
into evidence at the hearing.  According to her statement, Rosemary had
observed Weaver touching C.V. and she had noticed changes in C.V. and Weaver.  She
stated that she had “had some suspicions” about the relationship between C.V.
and Weaver.  She heard C.V. talking to Weaver on the phone and recorded the
conversations on approximately four occasions.  She eventually questioned C.V.
who admitted to sexual conduct with Weaver.

This written statement demonstrates that Rosemary
suspected Weaver and C.V. of engaging in inappropriate conduct and that this
was her “objectively reasonable basis”
for believing that it was necessary and in C.V.’s best interest to consent to
the recordings on her behalf for the protection of her minor daughter.  See
Pollock, 154 F.3d at 610; see
also Alameda, 181 S.W.3d at 777-80.  We
cannot say that Rosemary failed to articulate an objectively reasonable good
faith basis for believing that the recordings were in C.V.’s best interest.  Accordingly,
we need not address whether there is a reasonable
expectation of privacy in conversations conducted via speakerphone.  See
Romero, 800 S.W.2d at 543; see also Cisneros, 165 S.W.3d at
856; Tex.
R. App. P. 47.1.  We overrule Weaver’s
first point of error.

HEARSAY

            In his second point, Weaver argues
that the trial court abused its discretion by admitting three portions of
testimony that he contends amount to hearsay: (1) testimony from C.V.
addressing whether Rosemary pressured C.V. to change her story; (2) testimony
from C.V. addressing the conversations recorded by Rosemary; and (3) testimony
from Rosemary addressing her conversations with C.V.

Standard of Review and Applicable Law

            We review a trial court’s decision to
admit or exclude evidence
for abuse of discretion. 
See Martin
v. State, 173
S.W.3d 463, 467 (Tex. Crim. App. 2005); see also Shuffield
v. State, 189
S.W.3d 782, 793 (Tex. Crim. App.), cert. denied, 127 S. Ct.
664, 166 L. Ed. 2d 521 (2006) (citing Rachal
v. State, 917
S.W.2d 799, 816 (Tex. Crim. App. 1996)).  ”If the trial court’s
decision was within the bounds of reasonable disagreement, the appellate court
should not disturb its ruling.”  Shuffield, 189 S.W.3d at 793.

Hearsay is a statement, other than one made by the
declarant while testifying at the trial or hearing, offered in evidence to
prove the truth of the matter
asserted.  Tex R. Evid. 801(d).  A
hearsay statement may be admissible if it falls within an exception to the
hearsay rule.  See Tex R. Evid. 803.

Analysis

C.V. testified, over Weaver’s hearsay objections,
that she changed her story because Rosemary instructed her to do so.  Rosemary told
C.V. what to say:     

She said that if anybody was to ask me if -- why I
am changing my story now, it would be because now that I am pregnant, I don’t
want Joseph to pay for what -- for something he didn’t do and that I have a lot
of guilt.  And if someone were to ask me if -- whether --

 

C.V. also testified, over Weaver’s hearsay
objections, that she agreed to allow Rosemary to record her telephone
conversations with Weaver because Rosemary wanted proof of the relationship between
Weaver and C.V.

            Rosemary testified, over Weaver’s
hearsay objections, that she asked C.V. about her relationship with Weaver.  According
to Rosemary, C.V. disclosed that she and Weaver took showers together and watched
a pornographic video, and that Weaver rubbed C.V.’s breasts, touched C.V.
“[a]ll over her body,” tried to have sexual intercourse with C.V., and tried to
put his penis inside C.V.  Rosemary testified that she told the Carrollton police that C.V. had said that Weaver put his penis inside her.

Weaver argues that C.V.’s testimony and Rosemary’s
testimony was offered to prove the truth of the matter asserted and that no
exception to the hearsay rule applies.  We find it irrelevant whether this testimony
qualifies as either hearsay or an exception to the hearsay rule.  In each of
the three instances, the complained of testimony was proceeded and/or followed
by the same or similar unobjected to testimony.

The record
contains other testimony indicating that Rosemary pressured C.V. to change her story. 
C.V. testified, without
objection, that Rosemary gave her a piece of paper on which she had written notes
for C.V. to memorize.  When she met with Weaver’s attorneys, C.V. repeated what
Rosemary had asked her to memorize:

As to what I said earlier, that; and to say that I
got the idea to lie about it from my friends.  And the only reason I did lie
about it was because they didn’t -- neither my mom nor Joe would let me go stay
with my family back in West Texas and that they would not let me go here and
there with my friends and go to a party that was just -- that somebody threw
not too long ago before going to the police.

 

Defense counsel also questioned C.V. on this
subject.  C.V. testified that Rosemary gave her notes, both before and after
meeting with defense counsel, instructing her what to say.  C.V. remembered
telling defense counsel that she had fabricated the allegations against Weaver:

I do -- I recall telling you that I did dislike
Joe and the way he was raising -- disciplining me and that the whole reason I
did make up the lie was because, like I said earlier, he didn’t let me go to my
grandparents’ house in West Texas where my sister lived and that he would not
let me go to a pool party that was there.

 

C.V. confirmed that Rosemary was in jail for
pressuring C.V. to change her story. 

The record
also contains other testimony addressing the recordings.  Defense counsel asked C.V. how Rosemary recorded
the conversations between C.V. and Weaver.  C.V. testified that while she spoke
with Weaver via speakerphone, Rosemary recorded the conversations and directed
the conversations by instructing C.V. what to say or ask.

Finally, the
record contains other testimony regarding the sexual activity between Weaver
and C.V. as described by Rosemary.  C.V. had testified, without objection, that
Weaver had touched her breasts, that she and Weaver took a shower together,
that she and Weaver engaged in sexual intercourse, that Weaver had put his
penis inside her, and that she told Rosemary what had been going on with
Weaver.  Detective Angela Lundy testified, without objection, that C.V. told
her that she and Weaver sometimes took showers together, that Weaver had put
his penis inside her vagina, and that she and Weaver had engaged in sexual
intercourse.  Lundy also testified that she discovered two pornographic tapes
in Weaver’s truck that were “consistent with what [C.V.] had described.”

“[A]dmission
of inadmissible evidence
can be rendered harmless
if the same or similar
evidence is introduced without objection elsewhere during trial.”  Elder v. State, 132 S.W.3d 20, 27 (Tex.
App.—Fort Worth 2004, pet. ref’d); see
Lane v. State, 151 S.W.3d 188, 193 (Tex. Crim.
App. 2004) (“error
[if any] in the admission of evidence is cured where the same evidence comes in elsewhere without objection”); see
also Anderson v. State, 717 S.W.2d 622, 627 (Tex.
Crim. App. 1986) (“If the
fact to which the hearsay relates is sufficiently proved by other competent and
unobjected to evidence, as in the instant case, the admission of the hearsay is
properly deemed harmless and does not constitute reversible error”).  Because
the same or similar testimony was admitted elsewhere, without objection, any
error in admitting C.V.’s and Rosemary’s testimony would be harmless.  See
Elder, 132 S.W.3d at 27; see also Lane, 151 S.W.3d at 193;
Anderson, 717 S.W.2d at 627.  We overrule Weaver’s second point of error.

Having overruled Weaver’s two points of error, we
affirm the trial court’s judgment.

 

FELIPE REYNA

Justice

 

Before Chief Justice
Gray,

Justice
Vance, and

Justice
Reyna

Affirmed

Opinion delivered and
filed November 21, 2007

Do not publish

[CRPM] 









[1]               It is not entirely clear on which
theory the trial court denied Weaver’s motion:

 

Well, there’s a bunch of different issues that are
kind of commingled here, in my mind.  But, I think there’s case law that says
any phone conversation you have over a cell phone you don’t have an expectation
of privacy in, period.  And I think certainly any conversation you have over a
speakerphone -- I mean, this isn’t even a wiretapping case as the evidence has
developed.





[2]               Pollock is
the “leading case regarding the vicarious-consent doctrine in the context of
the federal wiretap statute.”  Alameda v. State, No. PD-0231-06, 2007 Tex. Crim. App. Lexis 868,
at *9 (Tex. Crim. App. June 27, 2007).  Alameda appears to be the first Texas case addressing vicarious consent in the context of the parent/child relationship.  See 181 S.W.3d 772, 777 (Tex.
App.—Fort Worth 2005), aff’d, No. PD-0231-06, 2007 Tex. Crim. App. Lexis 868 (Tex. Crim. App. June 27,
2007).

 





[3]               The Sixth Circuit remanded the case
because there were several fact issues, including “Sandra's motivation in
taping the conversations.”  See Pollock v. Pollock, 154 F.3d 601, 612-13 (6th Cir. 1998).

 





[4]               Alameda had been living with
Deborah, during which she had observed Alameda allowing J.H. to “do things she
was not supposed to.”  Alameda, 181
S.W.3d at 774, 779.

 





[5]               The State did not cross-examine Rosemary.