

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-08-00142-CR

_____

ERRICK CHARLES CHEEKS, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 15th Judicial District Court
Grayson County, Texas
Trial Court No. 056016-15

Before Morriss, C.J., Carter and Moseley, JJ.
Memorandum Opinion by Justice Carter

MEMORANDUM OPINION

After a routine traffic stop led to the discovery of 8.8 pounds of cocaine, Errick Charles Cheeks pled guilty to possession of cocaine, with intent to deliver.[1] Cheeks filed a motion to suppress the cocaine, alleging that his continued detention after the conclusion of the traffic stop while awaiting the arrival of a canine unit violated his constitutional rights. The sole question on appeal is whether the trial court abused its discretion in determining the arresting officer had reasonable suspicion to further detain Cheeks for forty minutes after the traffic citation issued. We affirm the judgment of the trial court.

## I.    Factual Background

On Halloween evening in 2006, Trooper John Shaw observed the driver of a GMC Yukon fail to signal a lane change when attempting to pass another vehicle. After passing, the driver of the Yukon cut back in front of the other vehicle, causing the driver to "hit his brakes to keep from being hit." Shaw pulled the driver of the Yukon over based on these traffic violations. As he approached the passenger side door, Shaw noticed a faint odor of marihuana. Because the window was rolled down and the Yukon contained numerous air fresheners, the odor immediately faded. Shaw discovered a Nextel walkie-talkie, which he believed could be used to communicate with other "trail" vehicles ensuring the safe transportation of illegal drugs.

---

[1]Originally appealed to the Fifth Court of Appeals, this case was transferred to this Court by the Texas Supreme Court pursuant to its docket equalization efforts. *See* TEX. GOV'T CODE ANN. § 73.001 (Vernon 2005). We are unaware of any conflict between precedent of the Fifth Court of Appeals and that of this Court on any relevant issue. *See* TEX. R. APP. P. 41.3.

As a matter of routine, Shaw asked the driver for his license or identification card. The driver stated that he never had a driver's license, and was unable to produce any identification. Nineteen-year-old passenger Allison Craft gave Shaw two different Oklahoma identification cards. One of the cards depicted another woman named April Bailey, who is over twenty-one years of age, looks like Craft, and presumably facilitated Craft in the purchase of alcoholic beverages. At that point, Shaw asked the driver to step out and decided to question him and Craft separately.

Shaw asked a nervous Craft where she was coming from. At first, she claimed to be coming from Oklahoma, but after Shaw began to explain that could not be true since they were driving northbound on Highway 75 toward Oklahoma, Craft told him they came from Dallas where they spent one night visiting with friends. Craft indicated they were traveling with others. Because Craft gave Shaw a "fake ID," Shaw contacted the Oklahoma Department of Public Safety (ODPS) Fraud Unit to ask them what they wanted him to do with Craft and with April Bailey's identification card. When further questioned, Craft told Shaw that, while the driver was her boyfriend, she did not know his name.

Shaw interrogated the driver and eventually learned his name was Errick Cheeks. Cheeks, who also appeared nervous, said they were coming from Dallas where they spent two to three nights at his grandmother's house. Shaw ran a check on Cheeks' name and discovered he had previous drug convictions, had been found in possession of a dangerous weapon, and had outstanding warrants for traffic violations in Dallas County. At this point, because he had difficulty in identifying Craft and

3

Cheeks, smelled marihuana, noticed numerous air fresheners, and heard inconsistent stories, Shaw believed that Cheeks and Craft were transporting illegal narcotics. Also noting that Cheeks was communicating with someone by walkie-talkie, Shaw's suspicions about drug trafficking, and the possibility that a "trail" vehicle was nearby, were raised. He called for back-up and began to try to identify the owner of the Yukon.

Cheeks produced an insurance card indicating the Yukon did not belong to him or Craft. When prompted, Cheeks stated the Yukon belonged to his sister, who was on her way to the scene of the traffic stop. Shaw ran a Vehicle Identification Number check that indicated the Yukon actually belonged to a Curtis McMenafy. Thirty-three minutes into the traffic stop, Shaw issued Cheeks a warning for failure to signal and turn, and for cutting in and out of traffic. Cheeks was also issued a citation for failing to have a driver's license. Shaw clarified that Cheeks and Craft were not free to drive away from the scene because Cheeks did not have a driver's license and Shaw was waiting to hear from the ODPS Fraud Unit regarding Craft.

Shaw asked Cheeks for consent to search the vehicle. Initially, Cheeks consented, but when Shaw told him to step out of the Yukon, Cheeks withdrew consent. Shaw called several counties in an attempt to locate a canine unit. While Shaw was waiting for the canine to arrive, Craft told him the Yukon belonged to a woman who was waiting in a burgundy Chevrolet Impala in a nearby parking lot. Shortly, the Impala that Shaw believed was a "trail" vehicle pulled up behind Shaw, and the driver proclaimed the Yukon was hers. Knowing that the Yukon belonged to Curtis McMenafy,

4

Shaw asked the driver of the Impala to wait for the arrival of the canine unit. Approximately forty minutes passed from the time the citation issued until the canine unit arrived. The canine walked around the Yukon and alerted on the driver's side. A search revealed marihuana residue and 8.8 pounds of cocaine. Cheeks was promptly arrested, and a search of the trailing Impala produced another walkie-talkie and a large amount of cash.

Arguing that Shaw unreasonably and unconstitutionally detained him after the initial purpose of the traffic stop was complete, i.e., after the traffic warning and citations were issued, Cheeks filed a motion to suppress with the trial court. At the hearing, the trial court found that Shaw had reasonable suspicion to further detain Cheeks after the conclusion of the initial traffic stop, and held that the forty-minute delay while waiting for the canine unit to arrive was reasonable. We affirm.

## II. Standard of Review

A decision to grant or deny a motion to suppress is generally reviewed for abuse of discretion. *Oles v. State*, 993 S.W.2d 103, 106 (Tex. Crim. App. 1999); *Villarreal v. State*, 935 S.W.2d 134, 138 (Tex. Crim. App. 1996); *Maysonet v. State*, 91 S.W.3d 365, 369 (Tex. App.—Texarkana 2002, pet. ref'd). Because a trial court is the exclusive trier of fact and judge of witness credibility at a suppression hearing, we afford almost total deference to its determination of facts supported by the record. *Carmouche v. State*, 10 S.W.3d 323, 327 (Tex. Crim. App. 2000); *State v. Ross*, 32 S.W.3d 853, 856 (Tex. Crim. App. 2000); *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). We also afford such deference to a trial court's ruling on application of law to fact questions, also known

5

as mixed questions of law and fact, if the resolution of those questions turns on an evaluation of credibility and demeanor. *Villarreal*, 935 S.W.2d at 138.

However, we review de novo those questions not turning on credibility and demeanor. *Hernandez v. State*, 957 S.W.2d 851 (Tex. Crim. App. 1998). For this reason, we review de novo the trial court's application of the law of search and seizure to the facts. *Ross*, 32 S.W.3d at 856; *Maysonet,* 91 S.W.3d at 369. Since all evidence is viewed in the light most favorable to the trial court's ruling, we are obligated to uphold it on a motion to suppress if that ruling is supported by the record and is correct under any theory of law applicable to the case. *Carmouche*, 10 S.W.3d at 327; *Ross*, 32 S.W.3d at 855–56; *State v. Ballard*, 987 S.W.2d 889, 891 (Tex. Crim. App. 1999); *Maysonet*, 91 S.W.3d at 369. Further, when the trial court does not file findings of fact, we should assume that the trial court made implicit findings that support its ruling, so long as those implied findings are supported by the record. *Ross*, 32 S.W.3d at 855–56.

### III. Suppression Hearing

#### A. The Law of Search and Seizure

"No right is held more sacred, or is more carefully guarded, by the common law" than the freedom from unreasonable search and seizure. *Terry v. Ohio*, 392 U.S. 1, 9 (1968). A search which is reasonable at its inception may violate the Fourth Amendment by virtue of its intolerable intensity and scope. *Id.* at 18. Thus, it is imperative that the scope or purpose of a search be strictly tied to and

justified by the circumstances which rendered an invasion permissible in the first place. *Florida v. Royer*, 460 U.S. 491, 500 (1983); *Terry*, 392 U.S. at 19–20, 29.

However, an officer may request consent to search a vehicle after the purpose of an initial traffic stop is accomplished only if it is reasonable under the circumstances and the officer has not conveyed that compliance to the consent request is required.[2] *Davis v. State*, 947 S.W.2d 240, 245 (Tex. Crim. App. 1997); *State v. Pierce*, No. 05-07-00828-CR, 2008 WL 4075031, at *2–3 (Tex. App.—Dallas Sept. 4, 2008, no pet.) (mem. op., not designated for publication); *Powell v. State*, 5. S.W.3d 369, 377 (Tex. App.—Texarkana 1999, pet. ref'd). If consent is refused, any continued detention must be based on articulable facts which, taken together with rational inferences from those facts, "would warrant a person of reasonable caution in the belief that a continued detention was justified, i.e., the detainee was or would soon be engaged in criminal activity." *Herrera v. State,* 80 S.W.3d 283, 288 (Tex. App.—Texarkana 2002, pet. ref'd). "In other words, once the purpose of the original detention has been effectuated, any continued detention must be supported by some additional reasonable suspicion." *Simpson v. State*, 29 S.W.3d 324, 327 (Tex. App.—Houston [14th Dist.] 2000, pet. ref'd).

---

[2]The State did not contest that the initial purpose of the traffic stop was complete when citations were issued, despite the fact that Shaw never heard from the ODPS Fraud Unit regarding Craft and the fraudulent identification card.

The further detention must be temporary and last no longer than is necessary to effectuate the initial purpose of the stop.[3] *Royer*, 460 U.S. at 500; *Cisneros v. State*, 165 S.W.3d 853, 859 (Tex. App.—Texarkana 2005, no pet.). The United States Supreme Court has not defined a bright-line rule in evaluating whether the duration of an investigative detention is unreasonable. *United States v. Sharpe*, 470 U.S. 675 (1985). Instead, common sense and ordinary human experience govern over rigid criteria. *Id.* "Obviously, if an investigative stop continues indefinitely, at some point it can no longer be justified as an investigative stop. But our cases impose no rigid time limitation on *Terry* stops." *Id.* To impose a rigid time limit "would undermine the equally important need to allow authorities to graduate their responses to the demands of any particular situation." *Id.* at 686. Thus, "[t]he propriety of the stop's duration is judged by assessing whether the police diligently pursued a means of investigation that was likely to dispel or confirm their suspicions quickly," while using the least intrusive means available. *Cisneros*, 165 S.W.3d at 859 (quoting *Davis*, 947 S.W.2d at 245).

### B.    Shaw Had Reasonable Suspicion to Further Detain Cheeks

After stopping Cheeks for a traffic violation, Shaw could rely on all of the facts ascertained during the course of his contact with Cheeks and Craft to develop articulable facts justifying further detention. *Sims v. State*, 98 S.W.3d 292, 294 (Tex. App.—Houston [1st Dist.] 2003, pet. ref'd). We review the totality of these circumstances in determining that Shaw had a particular and objective

---

[3]Cheeks has not contested the propriety of the initial traffic stop.

basis to suspect that Cheeks was transporting drugs. *Id.*; *Haas v. State*, 172 S.W.3d 42, 52 (Tex. App.—Waco 2005, pet. ref'd).

Shaw smelled marihuana as soon as he approached the Yukon. He spotted numerous air fresheners, which could be used to mask the smell of drugs. A nervous Cheeks was unable to produce any identification, and his nervous passenger was found with fake identification. Separate questioning of Cheeks and Craft resulted in inconsistent stories about where they were coming from and how long they had been there. When Craft suggested they were traveling with others and Cheeks claimed his sister was on the way to the scene of the traffic stop, Shaw suspected that the walkie-talkie was being used to communicate with possible "trail" vehicles. A check run on Cheeks' name confirmed he had previously been convicted of a drug-related offense. Both Cheeks and Craft lied about the owner of the Yukon. Shaw asked for consent to search the vehicle immediately after the citation was issued, which was initially given but immediately withdrawn. The trial court correctly concluded Shaw was reasonable in suspecting Cheeks was transporting illegal narcotics.

In assessing whether a detention is too long in duration to be justified as an investigative stop, we examine whether Shaw diligently pursued a means of investigation likely to confirm or dispel this suspicion. *Sharpe*, 470 U.S. at 686. Immediately after consent to search was withdrawn, Shaw called the Sherman Police Department, and Colbert, Calera, Val Alstyne, Denison, Bryan, Durant, and Grayson Counties to ask for availability of a canine unit. Shaw spent fourteen minutes attempting to locate a canine before receiving word that Officer Tim Gann was picking up a canine at the

9

veterinarian's office that could conduct the free-air search or sniff. The canine unit arrived approximately thirty minutes after Shaw received word that it was on its way. Cheeks was arrested approximately seventy-three minutes after the initial traffic stop. We conclude that Shaw diligently pursued a means of investigation likely to dispel or confirm his suspicion quickly while using the least intrusive means available. Thus, the trial court did not err in determining the duration of the stop was reasonable. *Strauss v. State*, 121 S.W.3d 486, 492 (Tex. App.—Amarillo 2003, pet. ref'd) (holding seventy-five-minute lapse between time officer first stopped defendant and arrival of drug dog was reasonable); *Josey v. State*, 981 S.W.2d 831, 841 (Tex. App.—Houston [14th Dist.] 1998, pet. ref'd) (ninety-minute lapse between time officer first stopped defendant and arrival of drug dog was reasonable); *Haas,* 172 S.W.3d at 53 (citing *United States v. Frost*, 999 F.2d 737, 741–42 (3d Cir. 1993) (wait of almost one hour for drug dog was reasonable)).

## IV.     Conclusion

Because Shaw had reasonable suspicion to detain Cheeks, and the duration of Cheeks' continued detention was reasonable, we affirm the judgment of the trial court denying the motion to suppress.


Jack Carter
Justice


Date Submitted:     January 23, 2009
Date Decided:        January 30, 2009

Do Not Publish

10