ACCEPTED
12-14-00287-cr
TWELFTH COURT OF APPEALS
TYLER, TEXAS
4/8/2015 8:59:59 AM
CATHY LUSK
CLERK

**ORAL ARGUMENT REQUESTED**

**NO. 12-14-00287-CR**

**IN THE 12TH COURT OF APPEALS
TYLER, TEXAS**

FILED IN
12th COURT OF APPEALS
TYLER, TEXAS
4/8/2015 8:59:59 AM
CATHY S. LUSK
Clerk

---

**BRANDEE MICHELLE NICHOLS
APPELLANT**

RECEIVED IN
12th COURT OF APPEALS
TYLER, TEXAS
4/8/2015 8:59:59 AM
CATHY S. LUSK
Clerk

**VS.**

**THE STATE OF TEXAS,
APPELLEE**

---

**ON APPEAL IN CAUSE NO. 114-0561-14
FROM THE 114TH JUDICIAL DISTRICT COURT
SMITH COUNTY, TEXAS
HONORABLE CHRISTI KENNEDY, JUDGE PRESIDING**

**APPELLANT'S BRIEF**

**JEFF L. HAAS
100 E. FERGUSON, SUITE 908
TYLER, TEXAS 75702
STATE BAR NO. 08659600**

**ATTORNEY FOR APPELLANT**

## IDENTITY OF PARTIES AND COUNSEL

**APPELLANT:**
        **Brandee Michelle Nichols**

**APPELLANT'S TRIAL COUNSEL**
        **Jeff L. Haas**
        **100 East Ferguson, Suite 908**
        **Tyler, Texas 75702**
        **903-593-8338**

**APPELLANT'S APPELLATE COUNSEL**
        **Jeff L. Haas**
        **100 East  Ferguson, Suite 908**
        **Tyler, Texas 75702**
        **903-593-8338**

**APPELLEE**
        **State Of Texas**

**APPELLEE'S TRIAL COUNSEL**
        **Chris Gatewood**
        **Jacob Putman**
        **Smith County District Attorney's Office**
        **100 North Broadway, 4TH Floor**
        **Tyler, Texas 75702**

**APPELLEE'S APPELLATE COUNSEL**
        **Michael West**
        **Smith County District Attorney's Office**
        **100 North Broadway, 4th Floor**
        **Tyler, Texas 75702**
        **903-590-1720**

# TABLE OF CONTENTS

IDENTITY OF PARTIES AND COUNSEL.......................................................................

TABLE OF CONTENTS...............................................................................................

TABLE OF AUTHORITIES..........................................................................................

STATEMENT OF THE CASE.......................................................................................

ISSUES PRESENTED: ................................................................................

       **ISSUE ONE: THE TRIAL COURT ERRED IN DENYING APPELLANT'S MOTION TO SUPPRESS EVIDENCE SEIZED FROM APPELLANT'S VEHICLE SINCE THE INITIAL STOP OF THE VEHICLE WAS WITHOUT PROBABLE CAUSE THAT APPELLANT WAS VIOLATING THE TRAFFIC LAWS OF THE STATE OF TEXAS OR REASONABLE SUSPICION.**


       **ISSUE TWO: THE TRIAL COURT ERRED IN DENYING APPELLANT'S MOTION TO SUPPRESS EVIDENCE SEIZED FROM APPELLANT'S VEHICLE SINCE THE DISCOVERY OF THE CONTRABAND WAS INDUCED BY PROMISES AND THREATS BY LAW ENFORCEMENT WHICH LEAD TO THE DISCOVERY OF THE CONTRABAND**


STATEMENT OF FACTS.................................................................................................

SUMMARY OF ARGUMENT.........................................................................................

ARGUMENT AND AUTHORITIES................................................................................

ISSUE ONE, RESTATED ..............................................................................................

ISSUE TWO, RESTATED..............................................................................................

PRAYER.........................................................................................................................

CERTIFICATE OF SERVICE .......................................................................................

## TABLE OF AUTHORITIES

**STATUTES**

**TEX. HEALTH & SAFETY CODE ANN § 481.115 (a) ( c )**.................................................**22**

**TEX. PENAL CODE ANN § 12.42 (d)** .................................................

**TEXAS HEALTH AND SAFETY CODE 481. 25**.................................................**6,8**

**CASES.**

**Arizona v. Gant** 566 U.S. 332  (2009)................................................ 11,21
**Berkamer v. McCarty** 468 U.S. 420 (1984)...............................................14
**Carmouche v. State** 10 S.W. 3d 323 (Tex. Crim. App. 2000) ...........................13
**Cisneros v. State 165 S.W. 3d 853 , 858 ( Tex. App. Texarkana 2005)**...............**25**
**Colorado v. Bertine** 479 U.S. 367 (1987)...............................................6,20
**Daniels v. State 718 S.W.  2d 702 707 (Tex. Crim. App. 1986)**.......................**25**
**Davis v. State** 947 S. W. 2d 240 (Tex. Crim. App. 1997...............................14
**Fienen v. State** 390 S.W. 3d 328 (Tex. Crim. App. 2012)..............................25
**Florida v. Wells** 495 U.S. 1 (1990) ...................................................20,21
**Garcia v. State** 827 S. W. 2d 937 (Tex. Crim. App. 1992) .............................14
**Garza v. State** 2002 Tex. App. Lexis 6411 ............................................15
**Gautin v. State** 683 S.W. 2d 411 (Tex. Crim. App. 1984..............................20
**Heitman v. State** 815 S.W. 2d 681 (Tex. Crim. App. 1991).............................20
**Hernandez v. State** 60 S.W. 3d 106, 108 (Tex. Crim. App. 2001).......................16,26
**Moberg v. State** 810 S.W. 2d 190(Tex. Crim. App. 1991)...............................20
**Mosley v. State** 983 S.W. 2d 249, 259 (Tex. Crim. App. 1998)..........................16,26
**Ohio v. Robinette** 519 U.S. 33 (1996)..................................................14
**Powell v. State** 5 S.W. 3d 369(Tex. Crim. App. Texarkana 1979).......................14
**Reyes v. State**   741 S.W. 2d 414 (Tex. Crim. App. 1997) ............................24
**Schneckloth v. Bustamonte**   412 U.S. 218 (1973). ....................................24
**Shippey v. State** 556 S.W. 2d 246 (Tex. Crim. App. 1977) ...........................25
**South Dakota v. Opperman** 428 U.S. 364 (1976)........................................19
**State v. Duran** 396 S.W. 3d 563, 571 (Tex. Crim. App. 2013**).......................**13**
**State v. Garcia-Cantu,** 253 S.W. 3d 236,241 (Tex. Crim. App. 2008)...................13
**State v. Holland** 2008 (Tex. App. Lexis 9204)..........................................15
**State v. Ibarra** 953 S.W. 2d 242 (Tex. Crim. App. 1997) .............................24
**State v. Kelly** 204 S.W. 3d 808 (Tex. Crim. App. 2006)................................25

**State v. Montaro** 2013 (Tex. App. Lexis 8667)

**State v. Ogeda** 315 S.W. 3d 664 (Tex. App. Dallas 2010)........................................................15.

**State v. Ortiz** 382 S.W. 3d 367, 372 (Tex. Crim. App. 2012)...................................................22

**State v. Stotter** 264 S.W.3d 360 (Tex. App. Eastland 2008)....................................................13

**State v. Williams** 2010 (Tex. App. Lexis 4907)........................................................................20

**State v. Woodard**, 341 S.W. 3d 404, 410 (Tex. Crim. App. 2011)............................................22

**Terry v. Ohio** 392 U.S. 1 (1968).............................................................................................13

**Tyler v. State** 2011 (Tex. App. Lexis 6146 Ft. Worth 2011) ...................................................14

**Turrubiate v. State** 399 S.W. 3d 147, 150 (Tex. Crim. App. 2013)**......................................22**

**Untied States v. Galbert** 46 F2d 983 ( 5th Circuit Texas 1989)**.............................................12**

**United States v. Hurtado** 905 F2d 74 (5th Cir Texas 1991)......................................................24

**Valtierra v. State** 310 S.W. 3d 442, 447 (Tex. Crim. App. 2010)............................................13

**Walker v. State** 28 S. W. 3d 538 (Tex. Crim. App. 2000)........................................................14

## RULES

**TEX. R. APP. PROC. 38** .......................................................................................

| | | |
|---|---|---|
| **BRANDEE MICHELLE NICHOLS**<br>Appellant | § | **IN THE COURT OF** |
| **VS.** | § | **APPEALS 12TH DISTRICT** |
| **THE STATE OF TEXAS,**<br>**Appellee** | § | **TYLER,  TEXAS** |

## APPELLANT'S BRIEF

**TO THE HONORABLE COURT OF APPEALS AND THE JUSTICES THEREOF:**

**COMES NOW APPELLANT, BRANDEE MICHELLE NICHOLS,** the

Appellant, by and through her attorney of record, JEFF L. HAAS, and pursuant to the provisions

of Tex. R. App. Proc. 38, et. Seq., respectfully submits this brief on appeal.

## STATEMENT OF THE CASE

Appellant was indicted in Cause No. 114-0561-14 for the third degree felony offense of

possession of methamphetamine, one gram or less, a state jail felony enhanced by two prior state

jail felonies.  see Tex. Health & Safety Code Ann§ 481.115 (A) ( c)  (Vernon 2010).  (1CR1)

On   July 7, 2014,  the Defendant filed a motion to suppress evidence alleging that the

initial stop of her vehicle was in violation of the 4th Amendment of the United States

Constitution, Article 1 Section 9 of the Texas Constitution and Article 38.23 of  T.C.C.P.  by

6

being without probable cause or reasonable suspicion.  In addition, Appellant contends in her Motion to Suppress, that the contraband subject to this prosecution was only found after an illegal search in violation of the 4th Amendment of the United States Constitution Article 1. Section 9 of the Texas Constitution due to promise, threats,  and inducements made by law enforcement vehicles which led to the discovery of the contraband.  (1CR33)

A Suppression Hearing was conducted on  July 17, 2014, and Trial Court denied Appellant's Motion to Suppress on July 22, 2014.

On September 24, 2014,  the Trial Court entered its Findings of Fact and Conclusions of Law.  (1CR63)

On September 26, 2014, the Appellant appeared in open court and entered an open plea of guilty to the Court. On the same day, after preparation of the pre-sentence report and presentment of evidence, the Court sentenced the Appellant to five (5) years confinement in the Texas Department of Corrections Institutional Division and a $2000 fine. Notice of Appeal was filed on that day and an appeal bond was made subject to this appeal. (1CR75)

## ISSUES PRESENTED

**ISSUE ONE:   THE TRIAL COURT ERRED IN DENYING APPELLANT'S MOTION TO SUPPRESS EVIDENCE SEIZED FROM APPELLANT'S VEHICLE SINCE THE INITIAL STOP OF THE VEHICLE WAS WITHOUT PROBABLE CAUSE THAT APPELLANT WAS VIOLATING THE TRAFFIC LAWS OF THE STATE OF TEXAS OR REASONABLE SUSPICION.**

**ISSUE TWO: THE TRIAL COURT ERRED IN DENYING APPELLANT'S MOTION TO SUPPRESS EVIDENCE SEIZED FROM APPELLANT'S VEHICLE**

**SINCE THE DISCOVERY OF THE CONTRABAND  WAS INDUCED BY PROMISES AND THREATS BY LAW ENFORCEMENT WHICH LEAD TO THE DISCOVERY OF THE CONTRABAND**

**STATEMENT OF THE FACTS**

Appellant was indicted in Cause No. 114-0561-14 for the third degree felony offense of possession of methamphetamine,  one gram or less, with two prior state jail felony convictions. See Tex. Health & Safety Code Ann § 481.115 (a), ( c) (Vernon 2010).

At the Motion to Suppress,  a Department of Public Safety Trooper was the only witnesses called.   After the State stipulated that this was a warrantless arrest, the State agreed that the burden shifted to the State and to show that the arrest and the search of Appellant and Appellant's  vehicle was legal.  The State called Trooper Sheperd.  Trooper Sheperd testified that has been  a certified police officer for seven (7) years and was presently working for the Department of Public Safety.  (RRV2P7L4-9) Trooper Sheperd primarily worked  in Cherokee County, but on this night he was working a STEP Program, a DWI, intervention program in Smith County.

On January 19, 2014, at approximately 12:30 a.m. in Smith County, Texas,  Trooper Sheperd  made a stop of a FJ Cruiser due to the FJ Cruiser traveling with its bright lights on. (RRV2P7L19-22) The driver of the Cruiser stopped and the driver was identified as Appellant, Brandee Nichols. (RRV2P12L18-22)  Accordingly to Trooper Sheperd he advised Ms. Nichols why she was stopped and while conversing with her smelled a strong odor of alcohol. (RRV2P13L22-24)   According to Trooper, Ms. Nichols also exhibited slurred speech and exited the vehicle a little unsteady on her feet. (RRV2P16L11-16)  Appellant stated that she had had

8

two (2) beers to drink and that her bright lights (RRV2P41L6-8) were not on and that people continually flashed her to dim her lights. The Appellant demonstrated to the Trooper the difference between her high beams and low beams. State's exhibit 1 at 330 minutes (RRV2P41L13-16) The Trooper stated "they need to be adjusted". (RRV2P41L10) According to the testimony adduced at the hearing, Trooper Sheperd then stated to Ms. Nichols that "he believed her" . (RRV2P42L5-6) The Trooper then conducted Field Sobriety Tests. Prior to the conduction of Field Sobriety Test, Trooper Shepard moved Ms. Nichols about 25 yards due to there being an incline. (RRV2P18L15-20) According to the Trooper the HGN Test revealed 6 of 6 clues.

The next test conducted was the 9 step walk and turn. The Appellant had trouble with her shoes so she took her boots off and conducted the test, where according to Trooper Sheperd, he observed 4 clues in the walk & turn. (RRV2P23l2-4) He then conducted the one leg stand where Appellant exhibited no clues of intoxication. (RRV2P23l21-25) The Trooper asked Appellant if she felt she was intoxicated and Appellant said no, but she felt tipsy. (RRV2P25L7) The Trooper then arrested the Appellant for the offense of Driving While Intoxicated and read her her Miranda Rights. (RRV2P25L23-25)

States Exhibit 1S is a video recording of his encounter with Appellant on that night and that video was published. The video reflects that Appellant, subsequent to her arrest, was sitting in the Cruiser, (RRV2P29L6) that the Trooper spoke to other individuals in Appellant's vehicle and according to them determined that they were uncomfortable with driving the vehicle. (RRV2P29L1) The Trooper then took possession of Appellant's purse. (RRV2P30L17-19) The Trooper cannot remember if the purse was open or closed (RRV2P47L20-21), however he found

9

a glass pipe inside the purse, that is commonly used to smoke narcotics. (RRV2P30L22)

The Trooper confronted Appellant and Appellant stated that that indeed was her purse. (RRV2P30L24-25) The Trooper then showed Appellant the purse and told her " if there is something else in the car if you tell me now we can work something out, if you tell me no, it is going to be worse." (RRV2P32L3-5) At that time Appellant informed the Trooper that there was ½ gram of methamphetamine in her car and gave precise directions where to find it. (RRV2P32L18) The Trooper was unable to find it the first time, and Appellant gave additional information where the methamphetamine was advised that it was wrapped up in a gum wrapper. (RRV2P32L13) Subsequently the Trooper did find a ½ gram of methamphetamine. (RRV2P33L14)

Subsequently, the Trooper advised the Appellant that she was under arrest for the offense of Driving While Intoxicated and Possession of a Controlled Substance. Appellant then inquired " I thought you told me that we could work something out" (RRV2P51L15-16) the Trooper then responded well this "is pretty bad". (RRV2P50L18-22) State's Exhibit 1 at 1.00 hour. When I told you that, when I talked to you about that, I didn't know what you had, this pretty bad. [1]

## SUMMARY OF THE ARGUMENT

In its first issue, Appellant argues that the Trial Court erred in denying her motion to suppress the evidence found in her vehicle because the State did not prove that there was probable cause or reasonable suspicion to detain the Appellant for a traffic offense.

In her second issue, Appellant maintains that the Trial Court erred in denying her motion to suppress the evidence found in her vehicle since the search of her vehicle was conducted

_____

[1] Appellant had told the trooper exactly what she had and where it was located.

10

without a warrant and was not pursuant to a valid inventory search.  There was not a valid search

pursuant to an arrest  exception to the holding in **Arizona v. Gant** 129 S Ct. 1710, 173 L. Ed. 2d

845 (2009)  in addition the contraband was only found after the Appellant impliedly gave consent

to search due to unconstitutional promises and threats made by the arresting officer.


**ISSUE ONE RESTATED: THE TRIAL COURT ERRED IN DENYING APPELLANT'S MOTION TO SUPPRESS EVIDENCE SEIZED FROM APPELLANT'S VEHICLE SINCE THE INITIAL STOP OF THE VEHICLE WAS WITHOUT PROBABLE CAUSE THAT APPELLANT WAS VIOLATING THE TRAFFIC LAWS OF THE STATE OF TEXAS OR REASONABLE SUSPICION**


**FACTS**

Trial Counsels filed a motion to suppress asking for the exclusion of the

methamphetamine found in the Appellant's vehicle on the basis that the initial  detention of the

Appellant  was unconstitutional. (CR33)  This motion was heard at pre-trial and was ruled upon

at the conclusion of the hearing of the motion to suppress.  The Trial Court entered a written

order denying the Appellant's motion to suppress and filed Findings of Fact & Conclusions of

Law.

During the trial DPS Trooper Sheperd testified that approximately at 12:30 p.m. on

January 19, 2014, on County Road 2493 in Smith County, Texas.  While on patrol he observed

Appellant's vehicle heading toward him and in the Troopers opinion Appellants vehicle had its

bright lights on in violation of Transpiration Code 547.33 ( c ) as a result of this alleged traffic

violation, Trooper Sheperd turned around and initiated a traffic stop on Appellant's vehicle.

Upon encountering Appellant and explaining to her the reason for the stop there was a colloquy between the Appellant and the Trooper. The Appellant denied having her bright lights on and indicated that she was continually being flashed by other motorist who also thought that she had her bright lights on. Appellant asked the Trooper to stand in front of the vehicle where she could alternate between her hi beams and low beams. The Trooper then stated that the low beams were very bright and that she should get them adjusted. The Trooper also told the Appellant that he "believed her".

Pursuant to the request from Appellant, the Trial Court prepared Findings of Fact & Conclusions of Law. Incorporated in the Findings of Fact & Conclusions of Law which pertain to this issue, the Trial Court found:

(3) At approximately 12:30 a.m., Trooper Sheperd was approaching a stop sign on FM 2473. He observed the vehicle approaching him with its bright lights on. Trooper Sheperd is 100% sure that the vehicle's bright lights were on. (1CR64)

(7) The court finds Trooper Sheperd's testimony to be credible on this issue and finds that Defendant Nichols' bright lights were on as she approached and passed Trooper Sheperd. (1CR65)

### STANDARD OF REVIEW

A Trial Court's ruling on a motion to suppress evidence is reviewed under a bifurcated standard of review. **Turrubiate v. State** 399 S.W. 3d 147, 150 (Tex. Crim. App. 2013). The Appellate Court reviews the Trial Court's factual findings for an abuse of discretion, but

12

reviews the Trial Court's application of the law to the facts de novo. Id. The Appellate Court gives almost total deference to the trial court's determination of historical facts. **Valtierra v. State** 310 S.W. 3d 442, 447 (Tex. Crim. App. 2010) This same highly deferential standard applies regardless of whether the Trial Court granted or denied a motion to suppress evidence. **State v. Garcia-Cantu,** 253 S.W. 3d 236,241 (Tex. Crim. App. 2008). The Appellate Court give the same deference to the trial court's conclusions with respect to mixed questions of law and fact that turn on credibility or demeanor. **State v. Ortiz** 382 S.W. 3d 367, 372 (Tex. Crim. App. 2012). The Appellate Court reviews mixed questions of law and fact that do not turn on credibility and demeanor, as well as purely legal questions, de novo. **State v. Woodard**, 341 S.W. 3d 404, 410 (Tex. Crim. App. 2011).

When the Trial Court makes specific findings of fact, the Appellate Court determines whether the evidence supports those findings. Id. As a general rule, The Appellate Court views the evidence in the light most favorable to the Trial Court's ruling and affords the prevailing party the strongest legitimate view of the evidence and all reasonable inferences that may be drawn from that evidence. **State v. Duran** 396 S.W. 3d 563, 571 (Tex. Crim. App. 2013). The Appellate Court will uphold the Trial Court's ruling if it is reasonably supported by the record and is correct on any theory of law applicable to the case. **Turrubiate,** 399 S.W. 3d at 150.

However the Court of Criminal Appeals in **Carmouche v. State** 10 S.W. 3d 323 (Tex. Crim. App. 2000) held " that as a general rule the Appellate Courts including this Court should give total difference to the Trial Court's determination of the historical facts that the record supports especially when the Trial Court's finding are based on an evaluation of credibility and demeanor. In the unique circumstances of this case, however, we decline to give "almost total

13

deference" to the Trial Courts implicit findings under which the Court of Appeals found consent".

First we note that the Trial Court seems to have predicated its decision to admit the evidence on a finding of probable cause rather than on consent. Second the nature of the evidence presented in the videotape does not pivot "on an evaluation of credibility and demeanor." Rather, the videotape presents indisputable visual evidence contradicting essential portions of Williams' testimony. In these narrow circumstances, we cannot bind ourselves to the videotape evidence simply because Willaims' testimony may, by itself, be read to support the Court of Appeals' holding. In **Carmouche** there was a video as is the case here. The holding in **Carmouche** weakness the difference given to a Trial Courts findings when there is a videotape in existence.

### APPLICATION

A routine traffic stop is similar to an investigative detention see **Berkamer v. McCarty** 468 U.S. 420 (1984). An investigate detention is a seizure. **Powell v. State** 5 S.W. 3d 369(Tex. Crim. App. Texarkana 1979) to determine the reasonableness of an investigative detention, The Court must determine (1) whether the police officers action was justified at its inception and, (2) Whether it was reasonably related in scope to the circumstances that would justify the detention in the first place see **Terry v. Ohio** 392 U.S. 1 (1968) and **Davis v. State** 947 S. W. 2d 240 (Tex. Crim. App. 1997). Reasonableness is measured in objective terms by examining the totality of the circumstances **Ohio v. Robinette** 519 U.S. 33 (1996). An officer may lawfully stop and reasonably detain a person for a traffic violation. **Garcia v. State** 827 S. W. 2d 937 (Tex. Crim. App. 1992) see also **Walker v. State** 28 S. W. 3d 538 (Tex. Crim. App. 2000)

14

(decision to stop an automobile generally reasonable when an officer has probable case to believe the traffic violation has occurred.)

The failure to dim the headlights of a vehicle to oncoming traffic is a violation of Section 547.333 of the Texas Transportation Code. Pursuant to the Texas Transportation Code 547.333 ( c) (1) (b) that if the driver aims his lights so that no portion of the high intensity portion of the head lam projects into the eyes of the approaching vehicle operator he complies with the law. see **Garza v. State** 2002 Tex. App. Lexis 6411 at the hearing on the motion to suppress there is no direct evidence that the trooper ever testified that Appellant's high beams high intensity portion of the headlamp projected into his eyes see also **State v. Holland** 2008 (Tex. App. Lexis 9204) and **State v. Montaro** 2013 (Tex. App. Lexis 8667)

The testimony is analogous to the situation in Ford v. State 158 S.W. 3d 493 (Tex. Crim. App. ) where the Court held that the officers testimony presented the Trial Court with only a conclusionary statement that the Defendant was violating the traffic law. Finding " an absence of any facts" allowing the Appellate Court to determine the circumstances on which the officer can reasonably conclude before it actually was, had been, or would have been engaged in criminal activity. Appellant contends that there was no evidence presented at the motion to suppress which would allow the state to carry its burden or proof to show that te Appellant actually violated Transportation Code 547. 333 and that there were insufficient facts presented to the Trial Court allowing the Court to make a determination that Officer Sheperd could reasonably conclude that Appellant actually was, have been, or soon would have stopped, or would have engaged in criminal activity.

Consequently, Appellant argues that the almost total deference that an Appellant Court

15

will give a Trial Court's determination of historical facts should not be applicable here. The video recording entered into evidence as State Exhibit 1 conclusively demonstrates Appellant contends that were at least a question as to whether the Appellants high beams were on and the Trooper stated he believed her. In addition the conclusatory testimony does not support the Trial Court's finding of reasonableness. Consequently, the State did not meet is burden of proving that the traffic stop was a valid, legitimate traffic stop. Consequently, Appellant contends that the initial detention of the Appellant was unconstitutional in violation of 4th Amendment of the United States Constitution and Article 1 Section 9 of the Texas Constitution and T.C.C.P. Art. 38.23.

## HARM ANALYSIS

Since the evidence was seized in violation of Appellant's 4th Amendment rights, the harm analysis for the erroneous admission of evidence is Rule 44.2(a)'s constitutional standard. **Hernandez v. State** 60 S.W. 3d 106, 108 (Tex. Crim. App. 2001). The reviewing court must reverse the Trial Court's judgment, unless the Court determines beyond a reasonable doubt that the error did not contribute to Appellant's conviction or punishment. Tex. R. Ap. P. 44.2 (a). In applying the "harmless error" test, the Court must ask whether there is a "reasonable possibility" that the error might have contributed to the conviction. **Mosley v. State** 983 S.W. 2d 249, 259 (Tex. Crim. App. 1998).

In the present case, the challenged evidence formed the entire basis for Appellant's conviction and punishment. Since there would be no reasonable doubt that the error did not contribute to Appellant's conviction, this Court should reach the inevitable conclusion that Appellant was harmed by its admission.

16

**ISSUE TWO RESTATED: THE TRIAL COURT ERRED IN DENYING APPELLANTS'S MOTION TO SUPPRESS EVIDENCE SEIZED FROM APPELLANT'S VEHICLE SINCE THE DISCOVERY OF THE CONTRABAND WAS INDUCED BY PROMISES AND THREATS BY LAW ENFORCEMENT WHICH LED TO THE DISCOVERY OF THE CONTRABAND**

**FACTS**

After the Appellant was arrested for the offense Driving While Intoxicated. Trooper Sheperd attempted to determine whether or not there was anyone available to drive Appellant's vehicle to a safe location. (RRV2P28L22) The passengers in Appellant's vehicle indicated that they didn't' feel comfortable in driving. (RRV2P9L1) Consequently thereafter a conversation ensued between the trooper and Appellant. Pursuant to this conversation, Trooper Sheperd retrieved Appellant's purse, although he didn't remember whether the purse was open or shut, (RRV47L20-21) he discovered a glass pipe in the purse commonly used for smoking narcotics. (RRV2P22-25) Upon this discovery he confronted the Appellant, who was confined in the troopers police car and told her " I'm going to go through your car, if there is anything in your vehicle and if you tell me about it we could work it out. If you don't tell me, and if I find it it's going to be much tougher on you. (RRV2P31L8-9) Based on this conversation, Appellant informed the trooper that there was ½ gram of methamphetamine in a bubble gum wrapper in her car. (RRV2P32L12-13) Initially, the trooper was unable to find the methamphetamine and after asking Appellant again, the location, the trooper ultimately found the methamphetamine which was the subject of this prosecution.(RRV2P33L14-18)

17

Appellant is construing this as an implied consent to search her vehicle. Although there was a discussion between the Trial Court and Counsel regarding a 5th Amendment violation and indeed there is a component of the 5th Amendment argument, the crux of Appellant's argument is a 4th Amendment argument i.e. that any consent albet it implied, was obtained through promises and threats made by the trooper resulting in an involuntary implied consent.

The Trial Court in its Findings of Fact & Conclusions of Law proposed three different rationales for the denial of the motion to suppress and upholding the constitutionality of the search.

### (A) INVENTORY SEARCH

(19) Trooper Sheperd asked Defendant Nichols if there was anything valuable in her vehicle that she needed to tell him about. He told her that he was going to conduct an inventory of her vehicle and list everything valuable that was inside the vehicle. (1CR67)

(20) Texas DPS policy requires a trooper to inventory property that comes into his care and custody on an inventory sheet. (1CR67)

(21) Trooper Sheperd began conducting the inventory of Defendant Nichols' vehicle. (1CR67)

(29) The Court finds that Trooper Sheperd only conducted an inventory of the vehicle after he had made reasonable efforts to avoid towing the vehicle. (1CR72)

(30) The Court finds that Trooper Sheperd conducted the inventory of the vehicle pursuant to a Department of Public Safety policy requiring officers to inventory property that comes into custody. (1CR72)

(31) The Court finds that, in conducting the inventory of the vehicle, Trooper Sheperd

18

located a pipe commonly used for smoking methamphetamine. (1CR72)

That the hearing on the motion to suppress the trooper testified that after attempting to find a driver that's when I called for a wrecker on the radio. It was then that the trooper started searching the car. The search was conducted because he knew that there would be an inventory of the vehicle because the wrecker was coming to get it. (RRV2P30L18-19)

The Department of Public Safety has a policy that requires inventory of a vehicle if you have to call for a wrecker. In time, anybodies property that comes into care and custody we are required to inventory that property just on an inventory sheet. (RRV2P30L14-16)

After being in the car, the trooper brought a purse in the vehicle to the Appellant while he was looking through the purse he found a glass pipe commonly used for smoking narcotics. (RRV2P47L22-23)

On cross examination, the trooper testified that what was found was found subject to an inventory search. (RRV2P52L506) The trooper did testify that the Appellant told him where the contraband was and that he assumes that he would eventually found it anyway. (RRV2P39L22) However, he didn't know what would happen if she wouldn't have informed him.

## APPLICATION

The law is clear a police officers inventory of the contents of an automobile is permissible under the 4th Amendment if conducted pursuant to lawful impoundment of the vehicle **South Dakota v. Opperman** 428 U.S. 364 (1976). Inventory searches protect (1) the vehicle owners property while the vehicle is in custody and (2) the place against claims or disputes over lost or stolen property and (3) the police from potential danger.

19

An inventory search must be conducted in good faith and pursuant to reasonable standardized police procedures**. Colorado v. Bertine** 479 U.S. 367 (1987). The inventory search must be designed to produce an inventory of the vehicles contents and must not be a "rouse" for a general rummaging in order to discover incriminating evidence see **Florida v. Wells** 495 U.S. 1 (1990)

The State bears the burden of proving that an impoundment is lawful and they satisfy this burden by demonstrating that (1) the driver was arrested; (2) no alternatives other than the impoundment were available to ensure the vehicle's protection (3) the impounding agency had an inventory policy and (4) the policy was followed.

As stated the State bears the burden of establishing that the police conducted a lawful inventory search see **Gautin v. State** 683 S.W. 2d 411 (Tex. Crim. App. 1984). Overruled on other grounds by **Heitman v. State** 815 S.W. 2d 681 (Tex. Crim. App. 1991). The State satisfies this burden by demonstrating that (1) an inventory policy existed, (2) the officers followed the policy see **Moberg v. State** 810 S.W. 2d 190(Tex. Crim. App. 1991).

In this case, the trooper stated that he conducted an inventory search and that that was DPS Policy. However, the record is totally deplete of any evidence that the Trooper followed the DPS Policy. In **Gautin** **supra** the Court of Criminal Appeals held that the State's failure to present evidence of actual adherence to standard police inventory procedure resulted in the States failing to satisfy its burden to prove that the officer conducted a valid inventory search. And in **State v. Stotter**  264 S.W.3d 360 (Tex. App. Eastland 2008), the Appellate Court affirmed an order suppressing the  evidence obtained through an inventory search because the inventory search was illegal because the searching officers failed to fill out an inventory form in

20

accordance with standard department policy.

Although, Trooper Sheperd did testify he conducted a inventory search and DPS had a policy in regard to inventory searches, there is no testimony that Trooper Sheperd actually followed the policy. In addition, the Trooper testified it was highly unlikely, if not impossible, for anything of value to be in the gum wrapper.  This inventory search is fails to pass constitutional muster.  This was a general "fishing expedition" as prohibited in **Florida v. Wells**.

Consequently,  Appellant contends that the Trial Court's determination of a valid inventory search is clearly erroneous.

### SEARCH INCIDENT TO ARREST

The Trial Court also held that the search was constitutional due to a search incident to an arrest.   The Trial Courts Findings of Fact & Conclusions of Law that the State found:

(1) To the extent Defendant Nichols contends that Trooper Sheperd's discovery of the methamphetamine in the gum wrapper was not authorized as an "inventory " because no valuable item could have been found in a gum wrapper, Trooper Sheperd's subsequent search of the vehicle was also authorized under the automobile exception to the warrant requirement.  (1CR73)

(15) Upon discovery of the meth pipe, Trooper Sheperd had probable cause to search the vehicle, independent of the inventory policy.  (1CR73)

It is undisputed that the Trooper had placed the Appellant in custody and she was under arrest, her Miranda warnings had been read to her.  (RRV2P        )

.    Pursuant to **Arizona v. Gant** 566 U.S. 332 (2009)  law enforcement is entitled to s warrantlessly search a vehicle pursuant to an occupants arrest in few circumstances. (A) A valid

21

inventory search, (B) the search is conducted where the occupant is unsecured and is within reach and distance of the passenger compartment at all times.( C) the search is to obtain evidence in conjunction with the offense of arrest.

Appellant has already discussed the first exemption in the inventory search. The second exemption does not apply since its undisputed that the Appellant was secured in the patrol car when the search was conducted. The Third exemption does allow warrantless reasonable searches for evidence pertaining to the offense of arrest

In **Tyler v. State** 2011 (Tex. App. Lexis 6146 Ft. Worth 2011) The Courts have held that when Appellant was arrested for DWI it is per se reasonable for an officer so search the vehicle for evidence of the crime of arrest see also **State v. Williams** 2010 (Tex. App Lexis 4907) see also **State v. Ogeda** 315 S.W. 3d 664 (Tex. App. Dallas 2010). These courts have held that an automobile exception to the warrant requirement may be met when the police officer is conducting a search pursuant to obtaining evidence that pertained to the offense of arrest. In this situation the Appellant was arrested for the offense of Driving While Intoxicated. Pursuant to these cases, the trooper may have been justified in searching the vehicle for beer cans, liquor bottles, etc. This exception does not authorize "a general rummaging around in the search for evidence that does not pertain to the offense of arrest." [2] It's undisputable that the only offense the Appellant was under arrest for when the search was conducted was the offense of DWI. She was not under arrest, not was she ever under arrest for the offense of possession of narcotic paraphernalia in violation of Texas Health and Safety Code 481.25

---

[2] There is no evidence in the record that there is any allegation that the Appellant was intoxicated due to the introduction of a controlled substance or a drug in her system.

22

Consequently, in the allegation, that a search of Appellant's vehicle was justified by the automobile exception to **Gant** is clearly erroneous.

## SEARCH PREDICATED ON PROMISES & THREATS

The Trial Court in its Findings of Fact and Conclusions of Law stated::

(32) The Court finds that Trooper Sheperd asked Defendant Nichols whether there was anything else illegal and that Trooper Sheperd also said, "I'm going to go through that vehicle. Tell me right now if there is anything else in there that I will find. If I do find it after you tell me about it, we can work something out. But if I go in there and find it and you lied to me about being in there, it's going to be worse. More problems than if you just be honest with me now. Tell me what's in that car, I'll find it - work it out. But if you lie to me and I find it, we're going to have a big problem." (1CR69)

33. The Court finds that Trooper Sheperd's statements to Defendant Nichols were general, not specific. (1CR69)

34. The Court finds that Trooper Sheperd did not make any promise regarding a specific sentence, benefit, or outcome regarding Defendant's Nichols case.(1CR69)

35. The Court finds that Trooper Sheperd's statements, at most, were a prediction about future events, not a promise of a specific result. (1CR69)

36. Trooper Sheperd's statements to Defendant Nichols were not likely to lead to a false confession. (1CR69)

37. Trooper Sheperd's statements to Defendant Nichols did not actually overbear Defendant Nichols' will, cause her to give up her right to remain silent, or confess to the location of the methamphetamine**. (1CR70)**

23

## STANDARD OF REVIEW

Under the Federal Constitution, under which prosecutors must prove a consent to search was freely given, by a preponderance of the evidence, under the Texas Constitution the State must prove by clear and convincing evidence that consent to search was freely given see **State v. Ibarra** 953 S.W. 2d 242 (Tex. Crim. App. 1997) and **United States v. Hurtado** 905 F2d 74 (5th Cir Texas 1991) . Citing **United States v. Galbert** 46 F2d 983 ( 5th Circuit Texas 1989) the following factors were considered in the determining the voluntariness of the consent. (1) the voluntariness of the Defendant's custodial status and (2) the presence of coercion police procedures the extent level of the defendant's cooperation with the police (3) the defendant's wariness of his or hers right to refuse consent and (4) the defendants education and intelligence. (5) the defendant's belief that no incriminating evidence will be found. There is no factor that is controlling in determining whether consent has been given voluntarily. Failure to inform the person that he or she not submit to a search does not automatically act to invalidate consent. **Schneckloth v. Bustamonte** 412 U.S. 218. (1973).

The defendant recognized that the State's burden of proving a valid consent is not an issue that can be readily separated from other legal issues in the case that may be intertwined with it. See **Reyes v. State** 741 S.W. 2d 414 (Tex. Crim. App. 1997) . As discussed during the motion to suppress there are 5th Amendment considerations intertwined with the 4th Amendment considerations contained in this case.

## APPLICATION

The question where consent is voluntary is very fact specific, there is no bright line rule.

24

For instance there is some confusion about the effect of an officers statement that a warrant will be obtained if consent is not forthcoming, the general rule appears to be that such a statement in and of itself does not render any consent invalid see **Shippy v. State** 556 S.W. 2d 246 (Tex. Crim. App. 1977) however, the Court of Criminal Appeals in **Daniels v. State 718 S.W. 2d 702 707 (Tex. Crim. Appp. 1986)** in dicta indicates its such a statement which implies that a search is inevitable may render the consent invalid. See **Fienen v. State** 390 S.W. 3d 328 (Tex. Crim. App. 2012) **Cisneros v. State 165 S.W. 3d 853 , 858 ( Tex. App. Texarkana 2005)** officers false claim that he had authority to obtain a warrant rendered a consent involuntary. A consent that is not clearly expressed may be considered invalid. However in some circumstances mere acquiescence maybe sufficient for finding a voluntariness. **State v. Kelly** 204 S.W. 3d 808 (Tex. Crim. App. 2006) however in such a case, the issue of whether the request for permission to search constitutes a claim of authority appears to be highly important to the determination.

In the present case there is no doubt that the Defendant was under arrest, there is no doubt that the police officer told the Appellant I'm going to go through that vehicle tell me right now if there is anything in it, anything else in there that I will find, If I do find it after you tell me about it we can work something out, but If I go in there and find that you lied to me about it being in there it's going to be worse. More problems than if you just be honest with me now. Tell me what' s in that car, I'll find it, work it out, but if you lie to me and I find it, we are going to have a big problem. Its at that juncture after the Trooper testified that he was going to go to the car anyway, which Appellant contends was illegal search at its inception. The Trooper statements, threats, and promises, caused her to give up her right to remain silent and divulge the existence and location of the methamphetamine. The State cannot prove by clear and convincing evidence, that

25

but for the statements made by the trooper that the Appellant, would have either given up her right to remain silent, or impliedly consented to the search of her vehicle.

Appellant contends that the Trial Court erred in denying the defendant's motion to suppress due to the statements of the trooper which rendered Appellant's actions involuntarily.

## HARM ANALYSIS

Since the evidence was seized in violation of Appellant's 4th Amendment rights, the harm analysis for the erroneous admission of evidence is Rule 44.2(a)'s constitutional standard. **Hernandez v. State** 60 S.W. 3d 106, 108 (Tex. Crim. App. 2001). The reviewing court must reverse the Trial Court's judgment, unless the Court determines beyond a reasonable doubt that the error did not contribute to Appellant's conviction or punishment. Tex. R. Ap. P. 44.2 (a). In applying the "harmless error" test, the Court must ask whether there is a "reasonable possibility" that the error might have contributed to the conviction. **Mosley v. State** 983 S.W. 2d 249, 259 (Tex. Crim. App. 1998).

In the present case, the challenged evidence formed the entire basis for Appellant's conviction and punishment. Since there would be no reasonable doubt that the error did not contribute to Appellant's conviction, this Court should reach the inevitable conclusion that Appellant was harmed by its admission.

26

## PRAYER FOR RELIEF

WHEREFORE PREMISES CONSIDERED, Appellant respectfully prays that the judgment be reversed and the cause remanded for a new trial.

Respectfully submitted,

JEFF L. HAAS
Attorney at Law
908 First City Place
Tyler, Texas  75702
(903)  593-8338
_____Jeff L. Haas  /s/_____
JEFF L. HAAS
STATE BAR NO. 08659600
ATTORNEY FOR APPELLANT

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing Appellant's Brief  has been delivered to the District Attorney's Office of Smith County, Texas, on this the _7th_ day of_ April, 2015_.

_____Jeff L. Haas    /s/_____
JEFF L. HAAS

## CERTIFICATE OF COMPLIANCE

I certify that this brief was prepared with WordPerfect 12, and that, according to that program's word-count function, the sections covered by TRAP 9.4 (i)(1) contain 6703 words.

**Jeff L.. Hass /s/**
JEFF L. HAAS